ABRAHAM L. GRAHAM, ADMINISTRATOR, v. THE CONSOLIDATED TRACTION COMPANY.

Argued June 7, 1899—Decided November 13, 1899.

1. The "Act to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default" (*Gen. Stat., p.* 1188), limits the damages to compensation for the deprivation of a reasonable expectation of pecuniary advantage from the continuance of the life of the deceased person.
2. The fact that three verdicts have resulted in favor of the plaintiff for the same amount, will not prevent the court from setting aside the last verdict, where it is plainly indicated that it is the result of ignorance, passion or corruption, or is irreconcilable with the evidence.

3. Looking at the liability of a father for the support, maintenance and education of a child during minority, and considering what pecuniary benefit the father would receive from the son's earnings during or after minority, a verdict of $5,000 for the death of a boy four years old far exceeds any possible amount of such pecuniary benefit.

On rule to show cause.

Before MAGIE, CHIEF JUSTICE, and Justices VAN SYCKEL, GARRISON and LIPPINCOTT.

For the plaintiff, *George J. McEwan.*

For the defendant, *Abram Q. Garretson.*

The opinion of the court was delivered by

MAGIE, CHIEF JUSTICE.   There are two grounds upon which this rule to show cause must be made absolute.

The action is by the administrator of a deceased person to recover for himself, as the sole next of kin, damages for the death of the deceased under the provisions of the "Act to provide for the recovery of damages in cases where the death of a person is caused by wrongful act, neglect or default," approved March 3d, 1848.   *Gen. Stat., p.* 1188.

To succeed in such an action the plaintiff must establish by a preponderance of proof that the death was caused by the wrongful act, neglect or default of a person or corporation who would have been liable to an action for damages if death had not ensued.

The deceased was the son of plaintiff, and a boy of four years and four months of age.   He was struck and killed in a public street of Jersey City, by a trolley car belonging to defendant and run by a motorman in its employ.

An examination of the state of the case clearly shows that the trial judge was right in announcing to the jury that the plaintiff rested his right to recover upon the negligence of the motorman in one of three respects, namely, maintaining an excessive rate of speed in the locality where the injury

occurred, or not keeping a proper lookout for persons crossing in front of his car, or not giving warning to such persons by ringing the gong of the car.

With respect to the first of these claims the evidence is somewhat contradictory, but that which attributes to the car a high rate of speed is vague and uncertain. The contrary evidence is so supported by indubitable proof that the car was stopped within a few feet, that the negligence of the motorman in this respect is not made out by a preponderance of evidence. A verdict on the ground that the motorman was negligent in the speed maintained is plainly against the great weight of evidence.

With respect to the second claim, namely, that the motorman failed to keep a proper lookout to observe persons crossing the street over the track of his moving car, an examination of the evidence leads to a like conclusion. The fault of the motorman in this regard was claimed to be established by the occurrence; the details of the occurrence are left in dispute by the evidence. There was much contradictory evidence as to the manner in which the boy came to his death, but the great, indeed I may say the overwhelming, weight of evidence was that he was playing with other boys on the sidewalk; that there was nothing in his conduct to indicate that he intended to go upon the street and cross in front of the car, and that suddenly, when the car was very near to them, two boys started into the street and attempted to cross over the car track; one of the boys, who was in advance, just managed to get over safely; the second boy was the deceased, who was struck by the fender; another boy ran out, as he says, to catch the deceased and take him from the place of danger, but failed to do so, and ran himself into the side of the car and was knocked down. Upon the weight of this evidence there is no justifiable inference that the motorman failed to keep a proper lookout. The deceased crossed, not at a crossing, but in or near the middle of a block; his act was sudden, and the motorman had no reasonable ground to expect him to

attempt to cross. A verdict, if found on that ground, is opposed to the weight of evidence.

As to the remaining claim of negligence on the ground that the motorman gave no warning of the approach of the car, the verdict is equally unsupportable on the evidence. There is no statutory duty imposed upon street railway companies in respect to giving audible signals of the approach of their cars such as is imposed by law upon railroad companies. The duty of street railway companies in that regard arises out of their use of public highways, in which the public has a right of passage. Since they are permitted to use cars running upon rails from which they cannot deviate, and since this construction forbids their turning out to make way for the passage of other vehicles or passengers, a duty to give reasonable warning of the moving car may arise. Such a duty may reasonably require audible signals, but the circumstances disclosed by the evidence do not justify the inference that such duty arose in this case. The clear evidence is that the boys, in their play on the sidewalk, gave no indication that they intended to cross the track. No signal nor warning as to them would have been appropriate or required. When they rushed from the sidewalk and ran directly in front of the car, the motorman made every effort to arrest the motion of the car. The car was visible and visibly moving; the signal by the gong would have been of no avail. From the evidence, an inference of failure of duty in this respect could not reasonably be drawn.

The verdict in this case must also be set aside because it awards an excessive amount of damages.

The rule for admeasuring damages in actions like that now under consideration is not open to doubt in this court. The statute which permits such action has been uniformly construed to limit the damages to compensation for the deprivation of a reasonable expectation of pecuniary advantage from the continuance of the life of the deceased person. Such was the construction given to the statute by Chief Justice Beasley in *Paulmier, Administrator, v. Erie Railroad Co., 5 Vroom*

151. That construction was again approved in this court in *Demarest* v. *Little*, 18 *Id.* 28. It has been applied in the trial of such cases by every judge of this court. In my judgment, no other construction of the act is possible, but if possible this court would be obliged to adopt the construction which has for so long a time been recognized and applied by it.

This case presents an unusual feature. It was first tried in September, 1896, and the trial resulted in a verdict for plaintiff for $5,000. Upon a rule to show cause this court found the verdict excessive and set it aside for that reason. The case was again tried in October, 1897, and again resulted in a verdict in favor of plaintiff and awarding $5,000 damages. Upon a second rule to show cause the second verdict was set aside by this court on the ground that the damages awarded were excessive. The third trial resulted in a like verdict, which is now before us for consideration. It is strenuously urged in support of this verdict that in general courts will not disturb a second verdict if in substantial accord with the previous verdict, which had been set aside, and that, *a fortiori*, a third verdict in identical terms ought not to be disturbed by the court.

This argument is applicable and would prevail in many cases. It cannot be applicable to cases where the verdict plainly indicates that it is the result of ignorance, prejudice, passion or corruption, or is irreconcilable with the evidence.

In the trial now under review the trial judge correctly instructed the jury in respect to the rule for admeasuring damages in the case. Notwithstanding his explicit instructions, the jury awarded the sum of $5,000, and if such award exceeds the amount which the rule would alone justify, it clearly indicates that the jury refused to take the instructions of the court, and that their verdict must have proceeded upon some other ground than that presented by the evidence.

It is true that the amount of damages in such cases must be estimated on probabilities and, as was said by Chief Justice Beasley, to a large extent upon conjectures and uncertainties.

It results that there may be great differences in the result reached by different persons upon the same facts, but while this requires the court to be extremely cautious in exercising its power to review the verdict of the jury on the ground of the excess of damages, it will not excuse us for withholding our hands and permitting an unjust verdict to stand when no possible inference in its favor can be drawn from the evidence. The argument addressed to us in this respect would require us to permit a verdict for $100,000 to stand as well as one for $5,000.

Such cannot be the rule of duty in this court. If, on the evidence a verdict of a jury discloses injustice, whether from ignorance or malice or corruption, this court cannot permit it to be enforced.

The damages properly to be awarded in the case were such as would compensate the father for the reasonable expectation of pecuniary benefit from the deceased during the period of his minority when he owed service to his father, and thereafter when he would become emancipated by being of full age. To fix the precise amount that would thus compensate the father may be difficult, perhaps impossible, but it is not impossible to determine that $5,000 far exceeds any reasonable probability of pecuniary benefit from the continued life of the deceased. Looking at the liability of the father for the support, maintenance and education of the child during minority and considering what pecuniary benefit the father would receive from the son's earnings during or after minority in the most favorable aspect, it is plain that the award far exceeds any possible amount of such pecuniary benefit.

On this ground also the verdict must be set aside and a new trial granted.