JOSEPH DIRIGOLANO, DEFENDANT IN ERROR, v. JERSEY
CITY, HOBOKEN AND PATERSON STREET RAILWAY
COMPANY, PLAINTIFF IN ERROR.

Submitted March 23, 1908—Decided November 16, 1908.

In an action for damages for personal injuries the case constituted
by the testimony most favorable to the plaintiff was that the
plaintiff, a child five years of age, while running at dusk across
a city street alongside of which he had been playing with a
number of other children, fell on the trolley track, and before
he could get up was run over by a trolley car that was being
driven at a rate of speed characterized in the testimony as
"running very, very fast," and as "an awful rate of speed,"
"not stopping at all" (at intersecting streets). *Held*—
(1) That on a motion for a nonsuit, or for the direction of a
verdict, the questions whether the rate of speed at which a car
was being driven was consistent with the exercise of due care
and circumspection by the motorman, and whether the failure
to exercise reasonable care under the circumstances occasioned
the injury to the plaintiff, were for the jury and not for the
trial court.
(2) That the question presented by a motion to nonsuit or to
direct a verdict is not whether the trial judge would infer that
the defendant had been negligent, but whether the jury might
legitimately find from the testimony that such negligence had
been established.

On error to the Hudson Circuit Court.

For the plaintiff in error, *William D. Edwards.*

For the defendant in error, *John J. Fallon.*

The opinion of the court was delivered by

GARRISON, J.   The plaintiff brought his action in the court
below to recover damages for injuries received by his being
run over by the defendant's trolley car.   The case went to the
jury, upon whose verdict the judgment brought up by this
writ of error was entered against the defendant, whose con-
tention in this court is that the case should not have gone

to the jury, but that the trial court, upon the motion to non-suit, or upon the motion to direct a verdict, should have resolved the issues on which liability depended favorably to the defendant.

Upon this review of the trial, in its strictly legal aspects, the two motions may be considered together as they were substantially to the same effect, namely, that no negligence on the part of the company had been shown, and that the accident was an unforeseen and unavoidable one which "no amount of diligence" and "no human skill could have prevented." The question presented, therefore, is whether the trial court, in denying these motions upon the grounds stated, committed legal error. In ruling upon these motions the trial court was required not only to consider such alone of the testimony as was favorable to the plaintiff, but also to consider such testimony in the light of the most favorable inferences of which such testimony was legitimately susceptible. The plaintiff's case, as thus constituted, was that on September 14th, 1906, at about seven o'clock in the evening, a number of children, who were playing around some lumber that was piled up along the curb of Summit avenue, in Jersey City, in front of a new building that was in the course of erection, were driven away by the caretaker in charge of the building; that as they scattered in various directions, the plaintiff, a child five years of age, together with a larger boy, ran across Summit avenue; that in doing so the plaintiff, on reaching the trolley track, slipped on it and fell on his stomach, and before he could get up was run over by a trolley car of the defendant that was being driven at a rate of speed that was variously described by the plaintiff's witnesses as "a high rate of speed;" "running very, very fast;" "going full, what we call on the loop;" "full rate of speed, I should judge, not stopping at all" (at intersecting streets), and "went at an awful rate of speed." The trial court, with this testimony before it, which it could neither disregard nor disparage, was called upon by the defendant's motion to say that, notwithstanding this testimony, it conclusively appeared that the driving of the car in question at the rate of speed

shown in the testimony in the dusk of the evening through a city thoroughfare where children were playing along the curb, involved no element of negligence that contributed to cause the injuries to the plaintiff, but that the accident that ensued was one that no amount of diligence and no human skill could have prevented. It would seem to be too plain for discussion that upon the foregoing facts the question whether the motorman was exercising reasonable prudence in the management of his car, and whether he used reasonable circumspection under the circumstances, were questions that were within the domain of fact; that is, they were matters to be determined by comparing the legal duty of the motorman with his actual conduct as evinced by the various circumstances shown by the testimony and by the legitimate inferences to be drawn therefrom. The legal duty of the motorman was for the court to declare to the jury, but whether the rate of speed shown in the testimony was, under all the circumstances of the case, consistent with the due performance of that duty was essentially a question of fact for the jury. "The question," as was said in *Mumma* v. *Easton and Amboy Railroad Co.,* 44 *Vroom* 653, 660, "was not what the trial judge would infer from the evidence, but whether the jury might legitimately conclude that the proofs of the plaintiff showed the defendants to have been negligent." The argument that a court question was presented by the consideration that after the plaintiff fell it was a physical impossibility to have stopped the car, and that at this juncture the accident must have happened, even if the car had been going at a proper rate of speed, is wholly inconclusive, for the reason that such argument takes into consideration only the conduct of the motorman at this particular juncture and fails to extend a like consideration to the propriety of his conduct as he was approaching, but had not yet reached the place where the accident happened. While the car was thus approaching the motorman, in the exercise of proper circumspection, would have seen that there were children in the street, and in a general way what their ages were and what they were doing there, at least it was open to the jury to find that he would.

Whether in view of what he would thus have seen, reasonable precaution would have dictated, that he slow down his car while running past the children, or at least that he refrain from going at "a high rate of speed," or "very, very fast," were certainly questions that under our trial system are passed upon by juries and not by judges. The jury would have been entitled to give some weight in this connection, to the circumstance that the other boy who was with the plaintiff when he fell, a boy thirteen or fourteen years old, was also struck by the car, and also to the consideration that the plaintiff's fall may itself have been due to the confusion produced in one so young by the rapidity with which the car was being driven toward him. These and other like inferences bearing upon the question of defendant's liability were within the case made by the plaintiff's testimony, and could not have been legally disregarded by the trial judge or resolved in favor of the defendant by granting either of the motions that were made.

The case of *Graham* v. *Consolidated Traction Co.,* 35 *Vroom* 10, cited by counsel, was a rule to show cause decided by the Supreme Court solely on the weight of evidence; it established no legal rule that absolves motormen from the duty of exercising reasonable care to avoid running over children. *Fitzhenry* v. *Consolidated Traction Co., Id.* 674, also cited, was a case in which this court confined the grounds of its decision solely to the contributory negligence of a child *sui juris*. In the present case, in view, probably, of the extreme youth of the plaintiff, his contributory negligence or his voluntary assumption of risk were not made a feature of the case, either in the court below or in this court. The circumstance, that the plaintiff was playing in the street, or running across it from a place where he had been playing on the sidewalk, has no legal bearing upon the present case. The trolley company becomes of its own volition a user of the streets as they are. The duty involved in such use is the exercise of reasonable care with respect to the conditions that actually exist. The abstract question, therefore, of the legal right of children to play in the streets is not at all involved.

It was not error in the trial court to deny the defendant's motions.

The judgment of the Circuit Court is therefore affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BOGERT, VROOM, GREEN, J.J. 9.

*For reversal*—THE CHIEF JUSTICE, BERGEN, VOORHEES, MINTURN, VREDENBURGH, DILL, J.J. 6.