CATHERINE MAHER, ADMINISTRATRIX, ETC., PLAINTIFF-RESPONDENT, v. MAGNUS COMPANY, INCORPORATED, DEFENDANT-APPELLANT.

Submitted July 3, 1923—Decided October 22, 1923.

**Negligence—Death of Child from Burning by Phosphorus with which He was Playing and which Belonged to Defendant—Responsibility of Defendant—Measure of Damages.**

On appeal from the Hudson Circuit Court.

Before Justices TRENCHARD, PARKER and BERGEN.

For the appellant, *Thomas J. Brogan.*

For the respondent, *Alexander Simpson.*

PER CURIAM.

Plaintiff's intestate, a boy of thirteen, but apparently immature for his age, sustained fatal injuries from burning by a stick of phosphorus which he had put in his pocket, supposing it to be candy. The phosphorus spontaneously ignited, as it usually does, and inflicted fatal injuries. For this death the plaintiff instituted the present action, charging that the phosphorus came into the hands of the boy through negligence of the defendant or its agents, and the principal question argued before us on the briefs is that there was  no evidence

to justify the jury in drawing the inference that the defendant was responsible for the phosphorus being in the boy's pocket. Other points will be noticed presently.

The boy in question with some friends, while on a highway in Jersey City, March 14th, 1922, it being then Good Friday and the defendant's plant being closed from Thursday night over Sunday, came across a tub or vat made of iron or steel that was standing in the highway in front of the factory premises. According to the plaintiff's proofs the boys saw under water in this vat some yellow sticks which looked like candy, and took them out of the water, plaintiff's intestate putting one in his trousers' pocket. After the water dried off the stick ignited and caused his death, as already stated. The evidence tending to connect the defendant corporation, through its servants with this occurrence was in substance that the phosphorus was in the tub protected by the water, that the tub was the defendant's tub, and that it had been put out for the junk man to take away because it was imperfect and no longer adapted for its purpose. The evidence also showed or tended to show that the defendant, which was engaged in the business of metal casting, had habitually a considerable quantity of phosphorus on its premises, and at the time in question had it there, which phosphorus was used in this business of metal casting. There was evidence to show that the phosphorus was not intended to be kept in a tub of this kind but, on the other hand, that it always was kept in some receptacle containing water in order to avoid its ignition. At the same time, if the jury believed that the phosphorus was in the vat out in the street and under water, as the evidence tended to show, these facts and the undeniable fact that phosphorus is a very dangerous substance and that the defendant had it habitually on its premises, and kept it so protected, combined with the unlikelihood, amounting almost to a demonstration, that the phosphorus could have gotten into the vat from any other source than from the store kept by defendant on its own premises from which the vat had been carried and placed on the street, and the further fact that the phosphorus could not have been carried except

under water for any distance without igniting, all point, in our judgment, to the permissible inference that the phosphorus was part of that which the defendant kept for its manufacturing uses, and that it needs must have been placed in the vat by some agency connected with the defendant, perhaps for the convenience of its servants in operating, and was allowed to remain there when the vat was placed out in the street to be carried away. Other inferences are possible, of course, but in a civil case like this it is not necessary to exclude the possibility of other inferences in order to make a case for the jury. These considerations dispose of the motions directed to taking the case away from the jury.

The only other alleged error urged is that stated in the sixth ground of appeal, that "the verdict of the jury is illegal, in that the verdict rendered as to damages is an illegal verdict." This is manifestly insufficient as a ground of appeal, but under it the defendant argues that the court erred in its charge respecting the rule of damages, and as that alleged error was excepted to and is assigned in the grounds of appeal, we take up the point on its merits.

The court charged on this point as follows:

"In actions of this kind, for the death of a minor, the parent is entitled to the earnings of that child until the child becomes twenty-one years old or is emancipated, that is until the child leaves home and cares for itself. This boy was not earning anything at the time of his death. He had not been able to do any work, he was too young; but the mother would be entitled to the sum, whatever it might be, that he would earn from the time he was able to earn until he was twenty-one years of age; but from that you should deduct the amount of money it would cost the mother during that time to support and clothe and educate him, because you see the mother is entitled to his earnings but she is bound in return to support him, clothe him and educate him—such education as the mother might give him—until he becomes twenty-one years of age."

It is said that this charge was erroneous, in that the court should have directed the jury to subtract from the estimated

earnings that would have enured to the benefit of the next of kin, not the cost of rearing the deceased from the time of the injury until he arrived at full age, but the entire cost of rearing him from birth; and appellant claims that this proposition is supported by the case of *Graham* v. *Consolidated Traction Co.*, 64 *N. J. L.* 10. We are quite unable to read any such meaning into the language of the opinion in that case. On the contrary we have always understood the rule to be that the computation of pecuniary injury commences with the fatal accident, or perhaps the death, no matter which, for present purposes, and both earnings and cost of education are calculated from that point. The test question is, what was the pecuniary value of the life of the decedent to the party or parties injured? And in answering this it seems plain that the decedent should be taken as he was at the time of his death, as a concrete fact. As such a living being at that time he was at least worth to the next of kin what they could reasonably expect to receive from his earnings or contributions in the future less what it would cost them, if obligated to support and educate him, for such support and education until he should be of age.

As to the argument that the next of kin should lose all that had previously been expended upon the deceased for his support and education prior to his death, by subtracting it from the award, it might with much greater force be argued that as that money had already been expended, as it turned out, to no purpose, they should be entitled to add it to the award instead of being required to subtract it.

We find no error in the record and the judgment will accordingly be affirmed, with costs.