PARAGON REFINING CO. v. HIGBEA et

Ohio Appeals, 6th Dist., Williams Co.

Nos. 146; 147. Decided Oct. 30, 1925

1134. SUMMONS—Where service of is invalid, party seeking service not required to wait until such invalid service is quashed before issuing an alias summons.

480. EVIDENCE—As to health of a beneficiary, subsequent to decedents death, is admissible.

WILLIAMS, J.

These actions were begun in the William Common Pleas, one by John Higbea as administrator of the estate of Grace Clarke deceased against the Paragon Refining Co., and the Rank Market Co. to recover for the wrongful death of Grace Clarke decedent; and two others by Gertrude Clarke, administratrix de bonis non, of the estate of Lawrence Clarke, deceased, against The Refining Co. and The Market Co. Of the latter two, one was for the wrongful death of the decedent, Lawrence Clarke, and the other for expenses incurred in connection with the care and treatment and death of decedents.

In the Higbea case the jury returned a verdict in favor of the plaintiff against the Refining Co. for $1250; but found in favor of the Market Co. The other two cases were consolidated and a verdict was rendered in favor of Gertrude Clarke and against the Refining Co. for $8,645.35; and in favor of the Market Co. Judgments were rendered on the verdicts in each case, and error was prosecuted to the Court of Appeals.

The evidence showed that the Refining Co. was a distributor of gasoline and kerosene to retailers and through some mistake delivered to the Market Co. gasoline instead of kerosene as ordered, the latter Company being a dealer in latter but not in the former.

One Virgil Daft was sent by Lawrence Clarke to purchase kerosene and the Market Company caused the can to be filled, believing that what was put into it was kerosene, whereas the evidence tends to show it was gasoline. One morning the decedent, while attempting to build a fire, apparently with gasoline, there occured a terrific explosion which injured Lawrence Clarke and his wife so severely that both of them died within a few days thereafter.

Summons was issued in these cases and served upon the Market Company in Williams County; and at the same time summons was issued to Lucas County for the Paragon Company and upon it there. Thereafter, and without quashing the service upon the Refining Company in Lucas County, summons was issued and service made on that Company in Williams County. The claim was made that as the verdicts were in favor of the defendant Market Co., service upon the Refining Company in a foreign county was invalid; and that service on the same defendant in Williams County was invalid also for the reason that an alias summons can not be issued during the life of the original summons. Therefore it is claimed that there was no valid service whatsoever. The Court of Appeals held:

1. The rule in Ohio is that where the service of an original summons is not valid, the party seeking service is not required to wait until the first service is quashed before issuing an alias summons. 25 OS. 451.

2. There was a valid service of summons upon the Refining Company, for, if the service in Lucas County was invalid, the service in Williams County was valid.

3. In the instant case, the finding of the jury was not a guess or conjecture but was an inference warranted by the evidence, if the jury saw fit to draw it. The Court below did not err in refusing to direct a verdict.

4. It was claimed that the Court erred in permitting the jury to take into consideration the physical condition of the beneficiaries after death of the decedent, and especially that of Arvilla Clarke.. The limitation of recovery in such cases is the pecuniary loss sustained by the beneficiaries.

5. But "for the purpose of showing that such beneficiaries needed and would likely have received aid from the deceased, the circumstances, age, health and means of support of the beneficiary, if a parent or next of kin of the deceased, as well as the age, health, disposition and thrift of the deceased may be shown." Ry. Company v. Altemaier, 60 OS. 10.

6. There can be no doubt that under the law as it exists in Ohio today, as shown by the decision in the Altemaier case, that evidence as to the health of a beneficiary, subsequent to the decedent's death, is admissible in evidence.

7. In the Higbea case it is claimed that the court erred in refusing to give the following request before argument: "It is negligence as a matter of law to pour either gasoline or kerosene into a stove in which a fire is burning or in which there are live coals and embers."

8. It would not be negligence to pour gasoline or kerosene into a stove in which there was a fire burning or in which there were live coals or embers, unless the party doing it knew of such fire or embers or could have known thereof by the exercise of ordinary care. The court did not err in refusing the request.

9. It is further claimed in the Higbea case

(Continued on Page 709)

# ATTORNEY GENERAL

### No. 932

### In Re BOARDS OF EDUCATION

### No. 2742. Decided Sept. 1, 1925

1065. SCHOOLS & SCHOOL DISTRICTS— Mere fact that a member of a board of education does not cast a vote in favor of the employment of his son or daughter is not sufficient to justify the conclusion that such member thereby places himself beyond the provisions and penalty imposed by 12932 GC.

Vernon M. Riegel, Director of Education, submitted an inquiry to the effect:—Do the provisions of 12932 GC. constitute an inhibition against a board's employment of the son or daughter of a board member, when that board member does not cast a vote in favor of such employment? And can the president of a board of education sign for it in a contract with his son or daughter as a teacher when such son or daughter has been employed by the board without the parent-member's participation in the action? The Attorney General stated:

Examination of 12932 GC. discloses three distinct inhibitions:—(1) against a board member voting for a contract to hire a son or brother, daughter or sister of such board members, (2) against a board member participating in the making of a contract with a son or brother, daughter or sister of such board member, (3) against a board member who acts in a matter in which he or she is pecuniarily interested.

The penalty attached is $25 to $500 fine or imprisonment for 6 months or both.

A board member by abstaining from voting would thereby doubtless save himself in that particular respect from the penalty of the above section. However, the above section imposes a like penalty against a board member who "participates" in the making of a contract employing a son or daughter as a teacher, and the signing by a board member as president of the board with his son and daughter would doubtless come within the inhibition of the statute.

It is not believed that the mere fact that a member of a board of education does not cast a vote in favor of the employment of his son or daughter is sufficient to justify the conclusion that such board member thereby places himself outside the provisions and penalties imposed by 12932 .GC.

### No. 933

### In Re PURCHASING POWERS

### No. 2779. Decided Sept. 12, 1925

323. COUNTY COMMISSIONERS — May purchase motor vehicles for departments under their direct control, and such vehicles may be used by other county officials, subject to the regulation of commissioners.

Otho L. McKinney, Prosecuting Attorney, desired an opinion upon a certain phrase as used in 2412-1 GC. as amended; and what departments are under the direct control of the board of county commissioners for which the commissioners would be authorized to purchase motor vehicles. The Attorney General held:

Section 2412-1 GC. as amended in Senate Bill No. 44 provides for purchasing of motor vehicles by the county commissioners for the use of the sheriff or sanitary engineer, their deputies and necessary employees. The second paragraph of the section provides that when the commissioners deem it necessary, they may purchase motor vehicles for their own use or for the use of any other department under their direct control, upon application to and approved by the judge of the Court of Common Pleas.

This section prior to the amendment provided for the purchase of automobiles for the use of the county commissioners and the sheriff, upon application to the Court of Common Pleas. Sec. 2412-2 GC. prior to amendment provided that use of such vehicles should be under such regulation as the commissioners provided. As amended this section provides that such vehicles shall be for use of commissioners and other county officials, subject to regulation by commissioners.

By "departments under the direct control of the county commissioners" it is believed is meant such as the county infirmary, county hospital, county tuberculosis hospital and other similar departments or institutions. Vehicles when purchased for such departments, may be used for other county officials, subject to the regulation of the county commissioners.

Taking both sections together, the following conclusions are reached:

1. That the commissioners may purchase motor vehicles for the use of the sheriff and sanitary engineer or their deputies, such vehicles to be for the use and subject to the regulation of the person for whom purchased.

2. That the county commissioners may purchase motor vehicles for their own use or for the use of any department under their direct control, and such vehicles may be used by other county officials, subject to regulation of the county commissioners.

No. 934
In Re BONDS
No. 2778. Decided Sept. 12, 1925

**874. ORDINANCE—Invalid, where it provides for investing of its general funds, other than its sinking fund, in the obligations of such city.**

The Buerau of Inspection and Supervision of Public Offices claims that a city adopted an ordinance providing for the investment of several city funds other than sinking funds, in its own bonds; and since no provision of the city charter authorizes this action, desires an opinion relative to the validity of this ordinance.

The ordinance provides in part that "whenever any obligations of the city are to be sold and same are not taken by the sinking fund commission, - - - - - the director of finance shall submit to the city manager and the director of law a statement of money in the treasury - - - - and the city manager may recommend as to whether these moneys should be invested in such obligations." The ruling of the attorney general was:

Section 4294 GC provides in part that the treasurer, upon giving bond as required by council, may, by and with consent of his bondsmen, deposit all funds and public moneys of which he has charge, in such bank or banks within the county, - - - - - subject to warrants and orders of the treasurer. Such deposit shall in no wise release the treasurer from liability for any loss which may occur thereby. Also, 4295 GC., "The council may provide, by ordinance, for deposit of all public moneys - - - in such banks, situated within the municipality or county, as offer, at competitive bidding, the highest rate of interest."

These two sections are the only ones relating to funds in the hands of a treasurer of a municipality; under a charter government. This method of caring for the municipal funds would seem to be exclusive. To permit a municipality to invest its funds except as is specified by statute, would impair the safety of such funds, and the ordinance attempting to permit investing in its own obligations is illegal because contrary to the general statute.

Under sections 3922 and 3923 GC., it is provided to whom bonds shall be offered, and there is no authorization therein for the city to offer such obligations to the persons in charge of the general fund of a municipality. The ordinance, therefore, would seem to be invalid for the reason that it conflicts with the sections relating to the sale of obligations by a municipality. Therefore, an ordinance providing for the investing of general funds of a city, other than sinking funds, in the obligations of such city, is invalid.

## COMMON PLEAS COURT

No. 935

NEW YORK LAUNDRY CO. v. NUSBAUM
Common Pleas, Hamilton County
No. 197247.

**394. COMPETITION—Employe, in absence of fraud, may leave employer's business and engage in competing business for himself and may solicit his former employer's customers so long as he does not make use of trade secrets or private lists, and there is no prohibitory contract.**

DARBY, J.

The New York Laundry Company contended that Wendel Nusbaum was for a number of years an employe in its service and that upon leaving its employ engaged in an unfair competition by soliciting its former customers in a competing business.

It seems that when Nusbaum severed his connection with the Laundry Company he procured as his own customers the former customers of the Company upon the route which he had operated. The company in bringing its injunction restraining Nusbaum from soliciting and procuring these customers. The Court held:

1. A list of customers on a laundry route being obtainable by a rival concern merely by observation, is not a trade secret to be protected as such by a court of equity.

2. "An employee upon ceasing his employment to engage in the laundry business for himself in competition with his former employer may solicit business from customers from whom he had received laundry work when he leaves with the employers all the lists of customers; and where there is no contract prohibiting him from soliciting patronage of such customers."

3. "Trade secrets are the property of the employer and can not be taken or used by the employe for his benefit or use; but customers are not trade secrets.

4. There being no showing that any lists were stolen or taken by the employe; and that all he did was to use his recollection of customers, the plaintiff was not entitled to an injunction. Home Laundry v. Smith, 8 NP., ns. 402.

5. The Company in this case is not entitled to the relief asked for and the petition is therefore dismissed.

Petition dismissed.

Attorneys—Zielonka & Dock for Company; Ragland, Dixon & Murphy for Nusbaum; all of Cincinnati.

# STATE SUPREME COURT
## NEW CASES, PROCEEDINGS AND DECISIONS

## Weekly Report of NEW CASES DOCKETED

Cleve. Rd. Co. v. Friedrich............ 19406

Consolidated Iron Steel Mfg. v. Indust.
Comm. ........................... 19407

Sandusky Gas & Elect. Co. v. State.... 19408

State ex v. Malaga Bd. of Ed......... 19404

State ex v. Ridgeway Bd. of Ed........ 19403

State ex v. Wabash Bd. of Ed........ 19405

Wilson et v. Fromm ................. 19409

### NOV. 4, 1925

19403—State of Ohio ex rel Retirement Bd. of the State Teachers Retirement System v. Board of Education of Ridgeway Rural School District, Hardin County et al; in mandamus. C. C. Crabbe, W. E. Benoy and C. S. Best, Columbus, for pltf.

19404—Same v. Board of Education of Malaga Rural School District, Monroe County, et al; same. Same.

19405—State of Ohio ex rel Retirement Bd. of the State Teachers Retirement System v. Board of Education of Wabash Special School District, Darke County, et al; in mandamus. C. C. Crabbe, W. E. Benoy, and C. S. Best, Columbus, for pltf.

### NOV. 5, 1925

19406—Cleveland Railroad Co. v. Clara E. Friedrich; motion for Cuyahoga Appeals to certify. Squire, Sanders and Dempsey, Cleveland, for pltf; W. D. Meals, Cleveland, for deft.

### NOV. 6, 1925

19407—Consolidated Iron Steel Mfg. Co. v. Industrial Commission of Ohio; error to Industrial Commission of Ohio. Baker, Hostetler & Sidlo and J. R. Kistner, Cleveland, for pltf; C. C. Crabbe and R. R. Zurmekly, Columbus, for deft.

### NOV. 7, 1925

19408—Sandusky Gas and Electric Co. v. State of Ohio; error to Franklin Appeals. King, Ramsey, Flynn & Pyle, Sandusky, for pltf; C. C. Crabbe and J. W. Bricker, Columbus, for deft.

19409—David W. Wilson et al, as Trustees v. Henry J. Fromm, et al; motion for Franklin Appeals to certify. J. A. Bowman and J. H. Robertson, Canton and Barton Griffith, Columbus, for pltf; Treadway and Marlott, Cleveland, for deft.

## PROCEEDINGS OF SUPREME COURT

### SUPREME COURT OF OHIO
### TUESDAY, NOV. 10, 1925
#### SUPREME COURT—GENERAL DOCKET

Cannon Ball Trans. v. Pub. Util.
Comm. ...................... 19327, 19328
Pritz et v. Messer ...................... 19299
Small v. Pub. Util. Comm.............. 19326
State ex v. Versailles Bd. of Ed........ 19386

#### SUPREME COURT—MOTION DOCKET
Doughty v. Phipp ................... 19249

### GENERAL DOCKET

19299—Emelia H. Pritz et al v. Frank Messer et al; error to the Hamilton Appeals. Petition in error dismissed; no constitutional question involved. Marshall, CJ., Jones, Matthias, Day, Allen and Kinkade, JJ., concur. Robinson, J., not participating. Dock. 7-30-25; 3 Abs. 482.

19326—W. O. Small v. Public Utilities Commission of Ohio. Dock. 8-14-25; 3 Abs. 530.

19327—The Cannon Ball Transportation Co. v. Public Utilities Commission. Dock. 8-14-25; 3 Abs. 530.

19328—The Cannon Ball Transportation Co. v. Public Utilities Commission. Dock. 8-14-25; 3 Abs. 530.

19386—The State, ex rel. Retirement Board of The State Teachers' Retirement System v. The Board of Education of the Versailles Village School District, Darke County, Ohio, et al. In Mandamus. Plaintiff's claim satisfied; judgment against defendants for costs. Dock. 10-20-25; 3 Abs. 658.

### MOTION DOCKET

19249—Eva Doughty v. Frank L. Phipps. Motion for an order directing the Court of Appeals of Cuyahoga County to certify its record. Case settled; withdrawn by plaintiff in error. Dock. 7-10-25; 3 Abs. 435.

## Weekly Abstract of PENDING CASES

### No. 936
### ZIPF v. DALGARN

No. 19340. Supreme Court
On review for final determination. Dock. Aug. 25, 1925; 3 Abs. 546.

45. ADVERSE POSSESSION—Must right of, be known to owner and be acquiesced in by him before it can become adverse?

Mary Dalgarn brought an action in the Franklin Common Pleas to enjoin Edward Zipf from moving upon 18 inches of land claimed to be hers by adverse possession and to require Zipf to replace a fence he had torn down, he claiming to be the owner of the disputed 18

inches of land in question.

There was never any dispute about the land until October, 1924, when Zipf had his lot surveyed and found that Dalgarn was maintaining a fence over and upon his property which he removed at her refusal to do so. Dalgarn purchased her property on Sept. 25, 1905. The restraining order was granted in the Common Pleas, and the Court of Appeals affirmed this decree in favor of Dalgarn, but certified the record of the case to the Supreme Court for review and final determination, on account of conflict.

The question raised in the Supreme Court is: Has Dalgarn acquired title by prescription to the 18 inches in question by having maintained a fence from the rear of her house to the rear lot line for a period of 19 years as against Zipf's title which he acquired by deed? The real question is one of adverse possession and under this general question, the questions of taking, mistake, and intention of the parties arise.

It is claimed that "A possession to be adverse, must be open, visible, continuous and exclusive, with a claim of ownership," and "In order to constitute disseizin of the co-tenant, there must be some overt act of unequivocal character to the denial and exclusion of the right of the other co-tenant in the common premises. The mere occupancy of one tenant of the common premises is not evidence of the ouster of the co-tenant."

It is contended that this rule applies to the case at bar. The fence was constructed only over part of the lot, that is the rear part, and on the other part of the lot there was no fence; and Dalgarn and Zipf were the common users of the strip between Zipf's and Dalgarn's houses and there was never any overt act of unequivocal character to denial and exclusion of the right of Zipf, as to the strip in question.

In order that a line other than the true boundary line may eventually ripen into adverse title, it is contended that, "There must be an intention to claim the land within a certain boundary, whether it eventually be the correct one or not. Where, however, intent to claim title exists only upon condition that the fence is on the true line, the intention is not absolute, but conditional, and the possession is not adverse." The construction of the fence under the circumstances of the case cannot be considered as evidencing an intention to claim ownership of the entire part of the lot from one end to the other. "A claim of right shall be such nature and character as to be adverse to the owner of the soil; which must be known to and acquiesced in by said owner."

Attorneys—H. B. Holmes for Zipf; A. Ward Clutch and Warren E. Bigony for Dalgarn; both of Columbus.

No. 937

COMM. TRAV. LIFE & ACC. ASSOS. v. SPIEGLE

No. 19216. Supreme Court
On motion to certify. Dock. June 19, 1925; 3 Abs. 401.

475. ESTOPPEL — Does doctrine apply where essential elements such as inconsistency on part of party against whom it is invoked or justifiable change of position and reliance thereon by party making the claim, are claimed to be lacking?

H. B. Spiegle's petition in the Cuyahoga Common Pleas alleged membership in the Commercial Travelers Life and Accident Association since 1900; receipt of quarterly premium notices and prompt payment of same until April 3, 1923; failure of the Association to send notice on April 3, 1923 or thereafter and Spiegle's consequent failure to pay premiums from that date and that he subsequently offered to pay all back assessments, but that the Association refused to re-instate him.

The Association set up a section of the contract providing that premiums are fixed and payable on January 5th and quarterly thereafter and that failure to pay any premium within 30 days after it should be payable, should constitute a forfeiture of all benefits; and also providing that although notices might be sent, any failure on part of the association to send such notices should not relieve a member from his duty to pay all premiums and providing further that the sending of such notice should not obligate the Association to send any other notice.

The case was heard and appealed to the Court of Appeals which handed down a decree in favor of Spiegle. A motion to certify the record was filed in the Supreme Court and it is claimed by the Association Spiegle's main contention is that because it continuously sent the premium statements, it thereby stopped itself from setting up forfeiture as a bases of defense.

The purpose of the doctrine of estoppel is to prevent a party from asserting, to anothers disadvantage, a right inconsistent with a position previously taken. The essential elements are inconsistency on part of the party against whom estoppel is invoked and a justifiable change of position and reliance thereon by the party making the claim. It is claimed that neither of these elements exist for the Association was clearly authorized to send out notices for the "convenience of the members" without thereby waiving its rights in any particular.

The contract to which Spiegle was a party not only gave the Association the right to take both positions but in addition provided that the taking on one position should not prejudice its rights under the other. It is further claimed that Spiegle was bound to know the terms of the contract and the rights of the Association and that the particular right of forfeiture could not be waived by sending notices and he should not now be permitted to assert estoppel after he acquiesced in the contract permitting particular acts on part of the Association.

It is argued that Spiegle cannot assert that he was misled by the sending of notices on part of the Association for he was notified at the time of each quarterly assessment from January 1921 to April 1923 of the provisions against waiver.

Attorneys—Tolles, Hogsett, Ginn & Morley for Association; Bernon, Mulligan, Leeley and LeFever for Spiegle; all of Cleveland.

Note—The OA. opinion will be found in 3 Abs. 590.

Motion dismissed by plaintiff in error at its costs. 3 Abs. 658.

No. 938
## WALKER v. WALKER
### No. 19339. Supreme Court

On motion to certify. Dock. Aug. 25, 1925; 3 Abs. 546.

**1085. SERVICE OF PROCESS**—Is a jurisdictional defect in a decree for divorce, raised when the service is by publication and defendant resides in another state?

**419. DOWER**—Would such divorce obtained in this manner, in which it was claimed the wife was the aggressor, bar her right of dower?

John Walker, now deceased, obtained a decree of divorce in the Mahoning Common Pleas in 1902, from Catherine Walker. The husband and wife had resided in Pennsylvania prior to his coming to Ohio. Service of process in the divorce action was obtained by publication. Subsequent to this divorce John Walker married Eva Walker, the defendant in error.

Catherine Walker instituted action in the Mahoning Common Pleas seeking to establish dower rights in property of which John Walker was seized at his death. The second Mrs. Walker contended that divorce for one's own aggression is a bar to the dower right; that before Catherine Walker could claim dower, the decree for divorce must be vacated; and that an anomolous construction existed in the statutes defining dower right and those governing vacation of judgments. Judgment was rendered in favor of Eva Walker; and on prosecution of error was affirmed by the Court of Appeals.

The case is in the Supreme Court on motion to certify and the following contentions are made:

It is admitted that 11993 GC. providing that one who is divorced for his own aggression is barred of dower is sound as a general principle. It is argued, however, that the court granting the decree of divorce must have jurisdiction of the court; and it is contended that it was never contemplated that it should apply where service of process was constructive or obtained by publication only.

The holdings in Ohio are uniform in declaring that service must be personal in order to enable the court to adjudicate upon the property right of dower. The reason for this is evident, for to bar the right of dower where the person of the defendant was not within the jurisdiction of the court would be to violate the fundamental principles that one is not to be denied his day in court nor to be deprived of his property without due process of law.

"A divorce being obtained by a husband from his wife in another state without service other than by publication, and she being at the time a citizen of and residing in this state, does not in any way affect her property rights in this state." Doer v. Boraythe, 50 OS. 726.

It is contended that vacation of the divorce decree was not necessary because such a decree cannot be vacated at all in Ohio. "A decree from the bonds of matrimony, although obtained by fraud and false testimony, cannot be set aside on an original bill filed at a subsequent term." Parish v. Parish, 9 OS. 534. It is claimed, however, that there is nothing in the decree to vacate that may by law be vacated, or in other words dower was not the subject of the action.

It is claimed that though dower begins with marriage it does not terminate therewith; but is an interest that continues until it is relinquished, or until the party entitled to it is properly before the court and divorced for his own aggression; i. e., barred.

Attorneys—George Edwards for Catherine Walker; W. R. Stewart for Eva Walker; both of Youngstown.

Note—OA. opinion will be found in 3 Abs. 493.

---

No. 939
## STALEY v. PUB. UTIL. COMM.
### No. 19334. Supreme Court

Error to Pub. Util. Comm. Dock. Aug. 24, 1925; 3 Abs. 546.

**1277. WORDS & PHRASES**—Should "after passage" in an act which restricts granting of certificate of public convenience and necessity by Public Utilities Commission upon affidavits after its passage, be construed to mean after approval by Governor?

This cause comes into the Supreme Court upon a petition in error from an order of the Public Utilities Commission denying Henry Staley a certificate of public convenience and necessity to operate a motor transportation company between Norwood and Montgomery Ohio. At the same hearing a certificate was awarded Edward Carley to operate over the identical route.

On May 25, 1925, Staley filed an affidavit with the Commission asking for a certificate under 614-87 GC. On July 13, 1925, the commission dismissed Staley's application and ordered that because Staley's affidavits were filed after the passage of House Bill No. 90 which provided that no certificate should be granted upon an affidavit unless same shall have been filed prior to passage of said act, and a certificate of public convenience and necessity was refused.

Substitute House Bill 90 (614-87 GC.) provided: "But no certificate shall be granted upon any such affidavit unless the same shall have been filed prior to the passage of this act." The act was passed by the General Assembly April 17, 1925; permitted to become a law by the Governor May 2, 1925 and was filed in the Secretary's office May 5, 1925. The Commission held the words "after the passage" meant May 2, 1925 or May 5, 1925.

It is contended that "after the passage" should be construed to mean August 4, 1925 to come within the inhibition against passage of retroactive laws.

"Laws providing for tax levies, appropriations for current expenses of state government and state institutions and emergency laws as defined in Sec. 1 d of Article 2 of the Constitution, go into immediate effect when approved by the Governor. All other acts go into effect 90 days after same have been filed with the secretary of state, regardless of the date of approval by the Governor." State v. Lathrop, 93 OS. 79.

It is therefore contended that the Commission until Aug. 4, 1925 could take no more notice of it than they could of a bill pending before the Legislature. "A statute passed to take effect at a future day is to be understood as speaking from the time of its operation, and not from the time of its passage. The intervening period is allowed to enable the public

to become acquainted with its provisions; but until then it becomes operative as a law, they are not compelled to govern their actions by it."

that the court erred in charging as to contributory negligence, in that it did not submit to the jury the question whether or not the husband and wife were, at the time of the explosion, engaged in a joint enterprise and did not charge that if they were, the negligence of either while carrying on such joint enterprise, would be chargeable to the other.

10. The evidence fails to disclose that Mrs. Clarke was participating in the building of the fire at the time the explosion occurred.

Judgment affirmed.

Attorneys—Denman, Wilson, Miller & Wall, Toledo; H. H. DeMuth, Bryan; and W. H. Shinn, Montpelier, for Refining Co.; Charles E. Scott, Bryan, and Charles A. Thatcher, Toledo, for Higbea et.