10 N.J. Super. 455 (1950)
77 A.2d 276
GERTRUDE E. McSTAY, ADMINISTRATRIX AD PROS., ETC., PLAINTIFFS-RESPONDENTS,
v.
EDWARD J. PRZYCHOCKI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1950.
Decided December 7, 1950.
*458 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. John P. Nugent argued the cause for the respondents (Messrs. Nugent & Rollenhagen, attorneys).
Mr. Harry Green argued the cause for the appellant (Mr. David Green, attorney).
The opinion of the court was delivered by BIGELOW, J.A.D.
The defendant appeals from a judgment for damages resulting from the death of two children by the tortious act of the defendant. At the pretrial conference, the defendant admitted liability and left as the only issue to be tried, the amount of damages.
The statute permits the recovery only of a sum that represents the present value of the pecuniary injury sustained by the next of kin. That injury is the "deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased. * * * The jury must weigh probabilities and to a large extent form their estimate of damages on conjectures and uncertainties." Paulmier v. Erie R.R. Co., 34 N.J.L. 151, 158 (Sup. Ct. 1870). In the present case, the decedents were two boys, one of them twelve years old and the other, ten. Their next of kin were their father, mother, two younger brothers and a baby sister; but before the trial, the father passed away. There was no evidence that, in the short time during which he survived his sons, he suffered any pecuniary *459 injury from their death. In the absence of such proof, no award could properly be made by the jury for damages sustained by him. Cooper v. Shore Electric Co., 63 N.J.L. 558 (E. & A. 1899); Sider v. General Electric Co., 143 N.E. 792; 34 A.L.R. 158 (N.Y. 1924); Van Beeck v. Sabine Towing Co., 300 U.S. 342; 57 S.Ct. 452 (1937). Mr. McStay's demise left his widow and surviving children without the one who would normally have been the breadwinner of the family. In that situation, the two oldest sons, had they lived, might well have started work at an earlier age and made a larger money contribution to the support of the family than if their father had lived out his life expectancy. His death was a factor for the consideration of the jury in estimating the pecuniary injury to the other beneficiaries of the action. Carter v. West Jersey, etc., Co., 76 N.J.L. 602 (E. & A. 1908). The cause of action vested upon the death of the boys but the quantum of damages was determinable in the light of the situation existing at the time of the trial. Francis v. A.T. & S.F.R. Co., 253 S.W. 819; 30 A.L.R. 114 (Tex. 1923); Paragon Refining Co. v. Higbea, 153 N.E. 860 (Ohio 1925). This, of course, is similar to the rule in other tort cases; the jury do not shut their eyes to what happens between the day of the accident and the trial.
The principal reasons urged for reversal relate to the charge to the jury and the size of the verdict. Defendant's counsel had submitted a request to charge based on a passage from Maher v. Magnus Co., 1 N.J. Misc. 469 (Sup. Ct. 1923); affirmed, 99 N.J.L. 514 (E. & A. 1924). The learned trial judge denied the request and then continued his charge to the jury:
"The charge requested says this" (actually the court reads from the Maher opinion, and not the precise words of the request):
"`In actions of this kind, for the death of a minor, the parent is entitled to the earnings of that child until the child becomes twenty-one years old or is emancipated, that is until the child leaves home and cares for itself. This boy was not earning anything at the time of his death. He had not been able to do any work, he was too *460 young; but the mother would be entitled to the sum, whatever it might be, that he would earn from the time he was able to earn until he was twenty-one years of age; but from that you should deduct the amount of money it would cost the mother during that time to support and clothe and educate him, because you see the mother is entitled to his earnings, but she is bound in return to support him, clothe him and educate him  such education as the mother might give him  until he becomes twenty-one years of age.'
"Ladies and Gentlemen, I do not charge that, because I don't think that is an accurate description of the law.
"I will give you a hypothetical case, merely for example.
"We will take a boy five years of age, who is killed by a locomotive, we will say. It is common knowledge that most boys stay in school until they are about 18 years old. During that time, the boy has to be clothed and fed and given spending money. It costs his mother and father a great deal of money, more than he would earn after school. It might cost $15 a week to bring that boy up, maybe more. The $15 a week is in the neighborhood of $750 a year. So, then you would take the years from 5 to 18, and there would be quite a sum of money  $10,000 or more, to bring up that boy. Now if his earnings are to be deducted from that, the result would be that the earnings from 18 to 21 would not be nearly as much as it cost to bring him up. Therefore, there would be no damages on the death of any young child, none at all, if you want to take the mathematical process, as that charge does. I feel that the charge is not proper, and I am not going to charge that and you may have an exception."
The first paragraph quoted above was taken from the charge of the court below in the Maher case and was sustained against the exceptions of the defendant, the tortfeasor. The appellate courts did not consider whether it was equally invulnerable to attack by the representative of the deceased child, and so the trial judge in the instant case was not bound to accept it as a pronouncement of our highest court. We think, however, that the quoted excerpt correctly states the law, at least if it be not construed to require a child's mother to continue his education until age 21. Cf. Cohen v. Cohen, 6 N.J. Super. 26 (App. Div. 1949). And if we understand that it deals with only one of the many elements that should be considered by the jury in reaching the sum of pecuniary injury. Had the request which was based on it been charged, the jury might have believed that they could not consider pecuniary benefits which the next of kin might receive after the decedents would have attained full age, and could not *461 consider benefits other than in the form of money. The law is settled that the jury is not confined to an estimate of advantages that might have accrued during the minority of the decedent. Graham v. Cons. Traction Co., 64 N.J.L. 10 (Sup. Ct. 1899); Mauthe v. B. & G. Service Station, 5 N.J. Misc. 981 (Sup. Ct. 1927). The statute does not limit the damages to what the next of kin would probably have received from decedents in money. The damages may include the money value of services and care which decedents, had they lived, would probably have given to the next of kin. Carter v. West Jersey, etc., Co., 76 N.J.L. 602 (E. & A. 1908). Earlier in the charge, the jury had been instructed that they "must also take into consideration the expenses that the mother would have in bringing this boy James up, and the same applies equally to Francis." This brief instruction brought to the jury's attention the subject of the request.
The court properly declined to charge as requested. But did the court commit reversible error in the comment on the subject? What we consider to be the vice of the charge is that it might well be understood to prohibit the jury from using "the mathematical process," and to require them to find a verdict for a substantial sum, even though their best judgment might be that the next of kin suffered no pecuniary injury. Such is not the law. Telfer v. Northern R.R. Co., 30 N.J.L. 188 (Sup. Ct. 1862); Graham v. Cons. Traction Co., 62 N.J.L. 90 (Sup. Ct. 1898). Same case, after new trial, 64 N.J.L. 10 (Sup. Ct. 1899); Morhart v. North Jersey St. Ry., 64 N.J.L. 236 (E. & A. 1900); Kopko v. N.Y. Live Poultry Co., 3 N.J. Misc. 498 (Sup. Ct. 1925); affirmed, 102 N.J.L. 440 (E. & A. 1926). But in the present suit, a verdict for nominal damages only would have been clearly inadequate. And the proofs were so lacking in figures, that there was no basis for a precise mathematical calculation. The defendant was not injured even though the jury considered that they were instructed to find for the plaintiff in a substantial sum, and not to attempt a mathematical ascertainment of the injury.
*462 In estimating the amount of injury to the next of kin, the jury should, and doubtless did, consider the various probabilities which, in the course of the years, might determine the pecuniary advantages which would accrue to the next of kin if the tragic event which gave rise to the action had not occurred: The normal life expectancy of the decedents; their physical, mental and moral characteristics; their likely earnings; the expense to the mother of bringing them up; the life expectancy of the next of kin; all leading to a finding of what contributions and for what periods the decedents would probably have made to the next of kin, or some of them. One factor in the assessment, and an important one, was the likelihood that the decedents would marry some day and establish homes of their own, and thereafter, for some years, be able to give but little assistance to their mother and the other children. Doubtless the census reports contain much data touching the percentage of American men who marry, and at what age, etc.
No evidence was presented as to the financial circumstances of the McStay family, although such matters bear on the question of damages. Was the family situation such that, had death not intervened, the boys would probably have gone to college, and to professional school, and have received an allowance from their mother as long as she lived? Or would they have been apt to spend their lives as common laborers, earning the lowest wages, and able to help the other members of the family but little? Of course, in our fluid American society, the economic and social position of no child is fixed unalterably by the circumstances of the family into which he is born. But on the other hand, the family situation is influential, especially until the child becomes a man and is able to make a position for himself. See Annotation, 149 A.L.R. 260. Another subject on which evidence was lacking was what it cost Mrs. McStay to provide food and clothing, etc., for a child. The jury should not have been left to conjecture on these matters.
*463 We have mentioned a number of factors that probably entered the jury's deliberations, but we do not intimate that others should have been excluded. All probabilities, every reasonable expectation, bearing upon the pecuniary injury should be taken into account. Hackney v. Del. & Atl. Tel. Co., 69 N.J.L. 335 (E. & A. 1903); cf. Barnett v. Cohen, 2 K.B. (1921) 461.
Counsel, in their argument on the question whether or not the damages were excessive, devoted their attention almost exclusively to the size of verdicts rendered in other cases arising from the death of minors. We deprecate that approach, although precedent for it can be found in such cases as Ward v. Public Service Coordinated Transport, 8 N.J. Misc. 836 (Sup. Ct. 1930). It ought to be possible to support an award of damages on some analysis that has its basis in the evidence and in that common knowledge and experience which men in general have and to which the jury-men may properly resort. Wigmore on Evidence, § 2570. What has been called a "rational computation of probabilities." Rowe v. N.Y., etc., Tel. Co., 66 N.J.L. 19 (Sup. Ct. 1901). And see Jackson v. Cons. Traction Co., 59 N.J.L. 25 (Sup. Ct. 1896). Let us take first the pecuniary injury arising from the death of the oldest son, Francis, at the age of 12 years. The cost of bringing him up would doubtless have been much greater than any small earnings, or the money value of the help he would have given around the home, for four years or so. The next two years his probable earnings  delivering newspapers after school hours, working in summer  might fully offset the expense. It is reasonable to suppose he would have left school and taken a full-time job at age 18, and applied all his pay to the common budget, for, say, seven years, or until he was 25 years old. In the course of those years, his pay would normally increase to perhaps $50 or $60 a week. Deduct his own personal expenses and the cost of his own upkeep and there would still remain a contribution to his mother and the younger children, aggregating several thousand dollars. We will assume that Francis *464 would marry at 25 and for a number of years be unable to help his mother. But when his own family was fully established and his mother should reach old age and be in need of help, she could reasonably expect to receive it from her son. No one can read the future; the circumstances that bear on the problem before us are innumerable. But the simple analysis we have made of the situation seems entirely consistent with the evidence presented and with common experience. Fill in probable figures; strike a balance; take the present value as the amount of damages, and $6,000, which was the amount of the verdict, seems not too much. Since the second son was two years younger than his brother, the pecuniary injury from his death would be smaller than in the case of Francis but still $6,000, which again was the verdict, was not excessive.
The judgment will be affirmed with costs.