## PAULMIER, ADMINISTRATOR OF CARHART, v. THE ERIE RAILROAD COMPANY.

1. A railroad company, whose road-bed is so constructed as to expose its employés to a latent danger, is liable to such of said employés as are injured thereby. If such danger is not obvious, it is the duty of such company to warn those who are to incur it, of its existence.

2. Where the track over a trestle-work was not capable of supporting an engine, and the engineer in charge had orders not to put his engine thereon, which orders he disobeyed, and the intestate of the plaintiff, who was a fireman on said engine, and who was unaware of said orders or of the danger, was thereby killed, the said trestle-work giving way; *held*—that the plaintiff was entitled to recover, on the ground that such death was occasioned in part by the want of care in the defendant, the railroad company, with respect to said trestle-work.

3. Where a servant receives an injury occasioned in part by the negligence of his master, and in part by that of a fellow servant, he can maintain an action against his master for such injury.

4. Contributory negligence, to defeat a right of action, must be that of the party injured.

5. The statute which gives a right of action in case of death from neglect is intended for the benefit of all the next of kin who may be deprived of a reasonable expectation of a pecuniary advantage from a continuance of the life of the deceased.

6. The verdict in this case set aside, on the ground of excess in the damages awarded.

This was a suit brought by an administrator, to recover damages for the death of the intestate, occasioned by the negligence of the defendants.

It appeared at the trial in the Hudson Circuit that the railroad of the defendants ran through their depot yard at Jersey City, and thence was projected over the water on trestle-work for about two hundred and fifteen feet. From this extension of the track, the cars were unloaded into boats.

On the occasion in question, this part of the track gave way under the weight of the engine, which was thereby thrown into the water. The intestate was fireman on this engine, and was drowned.

The defendants admitted that this trestle-work was not safe for locomotives. Their defence was, that it was not built for the engines to run upon; that the orders in the depot yard were, that no engine should be run upon it, and that the practice was to push the loaded cars out over the water by means of other cars interposed between them and the locomotive. There was some evidence to show that the engineer in charge of the locomotive in question had orders not to permit his engine to go beyond the fast land. There was nothing in the case which indicated that the intestate had any knowledge of such orders.

There was a verdict for plaintiff, and a rule to show cause, &c.

Argued before BEASLEY, CHIEF JUSTICE, and WOODHULL, DEPUE, and VAN SYCKEL, Justices.

For the motion, *Isaac W. Scudder*.

Contra, *W. B. Williams*.

BEASLEY, CHIEF JUSTICE. The principal ground on which a new trial is asked in this case is, that it was clearly shown by the evidence that the accident by which the intestate lost his life was occasioned, not by the negligence of the defendants themselves, but by that of their employés. They say that their road-bed extending over the water was properly constructed, in view of the purpose for which it was designed, and that it was misapplied to another purpose by their servants, contrary to their express orders. If these were the facts of the case, the position would be well taken. The intestate, when he came to his death, was in the employ of the defendants, and the consequence is, no action would have arisen if such death resulted purely from the neglect of one of his fellow servants. This rule at this day is admitted law, and was sanctioned by this court in the case of *Harrison* v. *Central Railroad*, 2 *Vroom* 293.

But this case was tried and expressly submitted to the jury on the ground that, to entitle the plaintiff to a verdict, there must be satisfactory proof of negligence on the part of the company. The charge was clear upon the point that the existence of negligence merely in the fellow servants of the intestate would not support the suit. There can be no doubt, therefore, that the jury was satisfied that the defendants had not exercised that kind or degree of care for the safety of their employés which the law exacts. This conclusion, I think, was fully warranted by the facts proved. Admitting on this subject the whole contention of the defendants, the structure in question subjected their servants to unnecessary danger. Stripped of all verbal disguises, the argument is this: that by their arrangements they required their employés almost hourly to run their engines to the brink of danger, and that their orders were to stop there. The road-bed over the water was supported by wood-work, which the defendants admit was dangerous to a locomotive, and what they required was, that the locomotive should be stopped on the fast land. As occasion called for it, in pushing the loaded cars out over the water, the engines were brought

necessarily to this line between the water and land. Here was a danger constantly recurring—just as imminent as though the requirement had been to run these engines up to the edge of a precipice. And, to make the matter worse, the danger in this case was entirely latent, for there was nothing to indicate that this part of the road extending beyond the land would not support a locomotive. It is obvious that it required the constant exercise of skill and vigilance to avoid this unnecessary risk, and yet it is not pretended that there was any notification to the engineers and other employés of the insecurity of this part of the road-bed. All that is claimed is, that from time to time the engineers were told not to run their engines beyond the edge of the fast land. These orders were merely verbal, and proceeded from the yard-master, who appears himself to have been ignorant of the greatness of the danger. It is manifest, from the evidence on both sides, that adequate means to inform the parties in charge of these locomotives of the peril at hand were not used, for several of the engineers themselves testify that occasionally they put their engines upon this insecure structure. Some of them said that they were not aware of its insecurity. These circumstances seem to me to constitute a legal default in the defendants. To require their servants, in the ordinary routine of daily duty, to run these engines up to the margin of this covert danger, was subjecting them to an unnecessary hazard. This, of itself, would be sufficient to sustain this action. So, likewise, I think the omission to use any means of making the danger known to those who were to incur it, would have a like effect. On either of these grounds the jury could rightly rest their verdict.

But, in the second place, it was said that even on the assumption of the presence of negligence on the part of the defendants, there was contributory negligence on the other side, and that, therefore, there should be no recovery. The negligence thus invoked was not that of the intestate, but that of one of his fellow servants. The intestate was the fireman on the locomotive, and it is not asserted that he

knew of the insecurity of the trestle-work, or of the orders not to go upon it. But it is claimed that the engineer in charge had received such orders, and that he disobeyed them and that, by his so doing, the accident occurred. I shall not go aside to inquire whether the disobedience of such an order would have the effect of depriving the next of kin of this engineer of a right of action against the company, though it is obvious that the disobedience of an order must often be quite a different thing from the legal notion of contributory negligence, which always involves the circumstance of knowingly exposing the person to the hazard from which the damage results ; for whatever may be thought of the position of the engineer, and on the assumption that a right of suit, on account of his misconduct, does not exist in his behalf, still, in my apprehension, the foundation of this action remains undisturbed. The jury has found the negligence of the defendants, and if we add to this, negligence in the engineer, we reach the conclusion that the injury to the intestate was the result of these two conjoint causes. For an injury so caused, I think the defendants are liable. The rule already referred to is, that the master is not responsible to one servant for the ill consequences of the negligence of a fellow servant, in the course of the common employment. The reason for this rule is, that as the master cannot prevent carelessness in his servants, it is reasonable to presume each servant agrees to run the risk of that which he knows, in the nature of things, to be inevitable. But the servant does not agree to take the chance of any negligence on the part of his employer ; and no case has gone so far as to hold that where such negligence contributes to the injury, the servant may not recover. It would be both unjust and impolitic to suffer the master to evade the penalty for his misconduct in neglecting to provide properly for the security of his servant. Contributory negligence, to defeat a right of action, must be that of the party injured.

Another objection to this verdict involves the proper construction and application of the statute relating to the re-

covery of damages in cases where the death of a person is caused by wrongful act or neglect. *Nix. Dig.* 234. In the present case the deceased left, as his next of kin, a mother and two brothers, and the jury were instructed that they should admeasure the damage by the probable pecuniary loss sustained by each of the three. Consequently, the question is presented whether, within the purview of this act, a person can be said to sustain a pecuniary loss by the death of his brother. The argument on the negative side of the proposition is, that no person, in any legal sense, can be said to sustain a pecuniary injury by the death of another who has not a right in law to support or assistance from the deceased. Thus, it is argued, a wife or child, and that class of persons who, under the law relative to the poor, have a claim to maintenance, will suffer a pecuniary loss by the death of the husband, father, or other person respectively, who, by the general principles of law, or by positive enactment, can be compelled to provide a maintenance, but that, where such legal liability does not exist, a mere possibility of pecuniary loss arises. The subject is not devoid of perplexity. The language of the statute is so general and indefinite that it leaves wide room for judicial construction. But I am satisfied that the interpretation just indicated is not admissible. It is in opposition to the generality of the provision contained in the first section of the act, and to the special provision of the second section. Thus: an action is given in every case where a liability would have resulted if death had not ensued; whereas, the construction contended for insists upon a liability only when a certain class of persons survive the deceased. In the second section, the act directs a distribution of damages " in the proportions provided by law in relation to the distribution of personal property left by persons dying intestate ;" but this provision is obviously impracticable on the hypothesis that particular classes of persons are alone entitled. For example: in the present case the mother, if impoverished, would have been entitled to support from her son ; the two brothers had no

such claim, and therefore according to the view under consideration, had no right to a share of the damages occasioned by the death, the result being that under these circumstances the mother would take the whole sum recovered. But such a distribution of the proceeds of the suit is entirely inconsistent with the distribution of the property among the next of kin of an intestate. The contention of the counsel of the defendants would make the mother the sole recipient of the benefits of this action; but the statute authorizing the action declares, in clear terms, that the moneys recovered shall go to the next of kin as in case of intestacy, and by this rule each of the brothers would have an equal interest with the mother. It seems to me it is not possible to effectuate the act upon this basis. It also seems to me that the literal language of the statute is to be followed, that is, a right of action exists in all cases in which such right would have existed in the party injured if death had not ensued, and that all the next of kin who would take in case of intestacy belong to the class of persons who, it is competent for a jury, under the given circumstances, to say, have sustained a pecuniary injury resulting from the death of their kinsman. By force of the English statute on this subject, 9 and 10 *Vic.*, *ch.* 93, it has been settled by construction that in estimating damages, mental suffering, or the loss of the society of the person killed, cannot be taken into consideration, but that the compensation must be confined to the pecuniary loss only. *Blake's adm'x* v. *The Midland Railway Company,* 18 *Queen's B.* 93; *Franklin* v. *Southeastern Railway Company,* 3 *H. & N.* 211; *Dalton* v. *Southeastern Railway Company,* 4 *C. B.* (*N. S.*) 296. This construction appears to assimilate, on the point in question, the English statute to our own, and consequently the action of the English courts in the enforcement of their law becomes important. The principle there adopted is thus stated in a recent case, *viz.,* " to consider whether there was evidence of a reasonable probability of pecuniary benefit to the parties if the death of

the deceased had not occurred, and was it lost by reason of that death caused by the wrongful act, neglect, or default of the defendants?" *Pym* v. *The Great Northern Railway*, 4 *Best & Smith's Queen's B.* 396.

It will be observed that this rule assumes that the pecuniary injury designated by the statute is nothing more than a deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased. And it is upon this principle that our statute is to be applied. The jury must weigh probabilities, and to a large extent form their estimate of damages on conjectures and uncertainties. The office is a difficult one, and many errors will probably be committed. The rule, therefore, that was given on this subject to the jury in the trial of the present case was in all respects correct. The verdict cannot be invalidated on this ground. But in the present case I think the verdict so exorbitant in amount that it ought not to stand. I can see no theory of probabilities, based on ordinary experience, which will justify this finding. The deceased was about twenty-two years of age. The mother was forty-one or two, and was able to support herself by her needle; her other two sons were severally sixteen and nineteen. The deceased, as fireman, got two dollars a day, and paid his own board. The evidence as to any assistance which this son had ever given to the mother was of the most general character. When asked what had been the dependence of the family since her husband's death, she replied "my eldest son, together with my own exertions." It seems to me, judging by probabilities, there is no sense in saying that this son would contribute over $3,000 to the support of the family. The mother was equal to her own maintenance, and the two brothers were of ages to earn their own living. According to the rule relied on by this jury, this widow would receive from her three sons during her life, in the way of support, in the neighborhood of $9,000—for there is no ground to suppose that each of the other sons would not have contributed nearly as much as the one who

was killed. Such a verdict is in the face of every day's experience, and is contrary to the spirit of the charge of the judge who presided at the trial, and in my opinion it should be set aside.

WOODHULL, DEPUE, and VAN SYCKEL, Justices, concurred.