ANNA SAKOS (SOCKOS), ADMINISTRATRIX AD PROSEQUENDUM OF STEPHEN SAKOS, DECEASED, PLAINTIFF-RESPONDENT, v. HARRISON BYERS AND MABEL B. BYERS, DEFENDANTS-APPELLANTS.

Argued October 23, 1933—Decided January 5, 1934.

For the appellants, *Frank G. Turner.*

For the respondent, *Silber & Silber* (*Osie M. Silber,* on the brief).

The opinion of the court was delivered by

HEHER, J. The complaint charges that the death of plaintiff's decedent, Stephen Sakos, an infant of the age of nine years, was the result of defendants' negligence in the operation of an automobile. Plaintiff seeks the recovery of damages for the consequent pecuniary injury suffered, it is said, by decedent's next-of-kin. There was a verdict for plaintiff, and from the judgment entered thereon defendants appeal.

Appellants challenge the trial judge's denial of their motion for a nonsuit and a direction of a verdict, upon the ground that there was an utter absence of evidence of their negligence, and that, even so, the contributory negligence of decedent conclusively appeared.

There was evidence tending to establish the following matters of fact: Decedent, on the afternoon of October 25th, 1930, shortly after two o'clock, was struck on a public highway by a motor vehicle owned and occupied by appellant Harrison Byers, and driven by appellant Mabel B. Byers, his wife, and he concededly suffered injuries which resulted in death. The highway was free of traffic at the time. There was noth-

ing to obscure the view of appellants. A companion of decedent observed him in the "middle of the road" two minutes before he was struck by the automobile. The collision occurred near a bridge that carried the highway over a small stream. This witness was at the bridge. He did not observe the collision, but he heard the "crashing noise." There was no horn or other signal of the approach of the automobile. Decedent was struck by the right front fender of the automobile. He was thrown against the stone wall of the bridge. The automobile struck the bridge with sufficient force to substantially damage it, and when it came to a stop decedent was lying on the road at a point three to five feet to its rear. Decedent was "in the center of the road" when appellants first observed him. Harrison Byers testified that when he first saw decedent he was ahead of the automobile, "twelve to fifteen feet, *parked right in the middle of the road.*" The vehicle was then moving at the rate of one and one-half to two miles per hour. He instantly applied the emergency brake, and his wife applied the foot brake. Although he testified that this vehicle, when moving at a speed of *ten miles* per hour, could be brought to a standstill in approximately *fifteen feet,* he admitted that the car, after the application of the brakes, moved a distance of between fifteen and twenty feet. When this appellant first saw decedent, he was in the highway at a point twelve feet from the wall of the bridge on the witness' right. He was four feet from this wall when struck by the vehicle. Decedent therefore moved in the direction of the wall a distance of eight feet, apparently in an effort to avoid injury. Mrs. Byers testified that when she first saw decedent he was in the highway five feet ahead of the car. As she approached the bridge, she observed three boys (companions of decedent) to the left of the highway, near the bridge. She sounded her horn. She testified: "I saw these three boys to my left and I blew my horn, thinking that they might go across; and as I did, why, I saw this other fellow (decedent) about five feet in front of me right in the middle of the car." She admitted that she did not know the direction from which decedent came. She testified: "I

thought he was going across; instead of that, he made a turn and ran to my right; so I turned in that stone wall to try to avoid him as I thought he was going to the left." The highway was thirty feet wide.

In such circumstances, the motions to nonsuit and for the direction of a verdict in favor of appellants were properly denied. In passing upon such motions, the court cannot weigh the evidence, but must take as true all evidence which supports the view of the party against whom the motions are made, and must give him the benefit of all legitimate inferences which are to be drawn therefrom. Where fair-minded men might honestly differ as to the conclusions to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury. *Lipschitz* v. *New York and New Jersey Produce Corp.,* 111 *N. J. L.* 392; 168 *Atl. Rep.* 390. It was fairly inferable from the testimony that if the operator of appellants' vehicle had exercised due care, she would have observed decedent, who had an equal right to the use of the highway, in time to avoid the collision, and that the requisite degree of care was not used even after she was cognizant of his presence upon the road. The failure to make timely observation may be predicated upon the testimony of appellants, and that, standing alone, would, of course, support an inference of negligence in the operation of the automobile.

As to decedent's alleged contributory negligence, it is manifest that, in the circumstances presented here, it cannot be said, as a matter of law, that he was guilty of negligence which proximately contributed to his injuries and death. There was evidence that he was in the center of the highway, at or near the point of collision, for at least two minutes before he was struck. Mr. Byers said that he was "parked right in the middle of the road," when he first observed him. Whether he exercised the degree of care that was required of him, under the circumstances, was a question peculiarly within the province of the jury.

Unless it is established by the evidence beyond fair debate that decedent was negligent, and that his negligence directly contributed to his injuries and death, a motion to nonsuit or

for the direction of a verdict, on that ground, will be denied. The question of contributory negligence in cases such as this is, in a peculiar sense, a question for a jury. *Lipschitz* v. *New York and New Jersey Produce Corp., supra.*

Appellants also assign as error the refusal of the trial judge to permit the introduction of evidence relating to the payment of $1,400 to the general administrator of decedent, in satisfaction, as appellants claim, of the damages sustained by decedent's next-of-kin, and the giving of his release, as such administrator, which, appellants maintain, discharged the cause of action pleaded. There was no error in the rulings complained of. This court held in the instant case, in reversing the judgment entered upon a verdict rendered at a prior trial of the issue, that the statute vests the right of action in the administrator *ad prosequendum,* and that the trial judge erred in directing the jury that credit should be given, in assessing plaintiff's damages, for the sum paid to the general administrator. *Sakos* v. *Byers,* 109 *N. J. L.* 302. The statute provides that satisfaction of the judgment recovered by the administrator *ad prosequendum* shall be made only to a general administrator, and if moneys have been paid to the general administrator in the instant case that should justly be credited on the judgment debt, relief may be had in the Supreme Court, where the judgment resides. *Manowitz* v. *Kanov,* 107 *Id.* 523; 154 *Atl. Rep.* 326; *Hankinson* v. *Hummer,* 12 *N. J. L.* 64; *Howard* v. *Richman and Rhea,* 1 *Id.* 139.

Judgment affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.

*For reversal*—None.