HARRY N. GREEN AND ANNE GREEN, INDIVIDUALLY; HARRY
GREEN, AS ADMINISTRATOR AD PROSEQUENDUM AND
GENERAL ADMINISTRATOR OF THE ESTATE OF DONNA
GREEN, DECEASED, PLAINTIFFS–APPELLANTS, v. STAN-
LEY BITTNER, JR., INFANT, BY GUARDIAN AD LITEM TO
BE APPOINTED, DEFENDANT–RESPONDENT.

Argued March, 3, 1980—Decided December 30, 1980.

1

*William B. Gallagher, Jr.,* argued the cause for appellants (*Klitzman, Klitzman & Gallagher,* attorneys).

*Joseph E. Zavesky* argued the cause for respondent (*Zavesky, Kelly, Madden & Van Dorn,* attorneys; *Craig W. Miller,* on the brief).

The opinion of the Court was delivered by

WILENTZ, C. J..

In the spring of her senior year at high school, Donna Green was killed in an automobile accident. She was a young woman of average intelligence and cheerful disposition; hard–working

and conscientious both at home and at school; level–headed and dependable. As her counsel aptly stated in summation, she was "everybody's daughter," not just meaning normal, but what everybody would want a daughter to be.

This action was brought for her wrongful death under *N.J. S.A.* 2A:31–1 *et seq.* Liability having been established at a separate trial, the jury in these proceedings were to "give such damages as they shall deem fair and just with reference to the pecuniary injuries resulting from such death . . . to the persons entitled to any intestate personal property of the decedent." *N.J.S.A.* 2A:31–5. The jury apparently found that Donna's survivors, her parents and brothers and sisters,. had suffered no pecuniary loss for they awarded no damages whatsoever. In effect her life was adjudicated worthless to others, in a pecuniary sense.

We reverse. Under the circumstances presented to us, such a verdict is a miscarriage of justice. *See Carrino v. Novotny*, 78 *N.J.* 355 (1979); *Baxter v. Fairmont Food Co.*, 74 *N.J.* 588 (1977). We remand for a new trial in accordance with this opinion on the issue of damages. We hold that when parents sue for the wrongful death of their child, damages should not be limited to the well–known elements of pecuniary loss such as the loss of the value of the child's anticipated help with household chores, or the loss of anticipated direct financial contributions by the child after he or she becomes a wage earner. We hold that in addition, the jury should be allowed, under appropriate circumstances, to award damages for the parents' loss of their child's companionship as they grow older, when it may be most needed and valuable, as well as the advice and guidance that often accompanies it. As noted later, these other losses will be confined to their pecuniary value, excluding emotional loss. Given this expansion of permissible recovery, a verdict finding no damages for the death of a child should ordinarily be set aside by the trial court and a new trial ordered. To sustain such a verdict "would result in a return to the outmoded doctrine that a child is a liability–not an asset." *Bohrman v. Pennsylva-*

*nia Railroad Co.*, 23 *N.J.Super.* 399, 409 (App.Div.1952). *Cf. McStay v. Pryzchocki*, 10 *N.J.Super.* 455, 461 (App.Div.1950), aff'd, 7 *N.J.* 456 (1951).

We intend, by so holding, to give juries in wrongful death cases involving children the same ability to do justice to their parents, within the limits of existing legislation, as they now have under our cases when children lose a parent. By thus expanding the permissible scope of recovery, we also hope to reduce the pressure on juries to award damages for the parents' emotional suffering, unquestionably the most substantial element of damages in these cases, but legally impermissible.

Donna was one of six children in a warm and close family. She was a good student, did her share of household tasks, including babysitting and keeping the younger children busy so that her mother was free to do other things. She worked after school, as well as on weekends and in the summer, and had done so since she was 14. She helped provide for her own material needs and was saving for her forthcoming graduation festivities. She had definite plans to enter college and ultimately to embark on a business career. Although others described her as fun–loving, ebullient and popular, her mother, who concurred, nevertheless characterized her as level–headed. She was always there when she was needed; she always came through. She was a good–hearted, devoted and dependable daughter.

At the close of the evidence the trial court charged the jury that their verdict, in accordance with *N.J.S.A.* 2A:31–5, was to reflect only past, present and future pecuniary losses to the survivors, including any direct financial contributions that Donna might have made, but was not to compensate for grief and sentimental losses. In addition, the trial judge stated, "the term financial loss also includes the reasonable value of benefits which would have been received by a survivor in the nature of services or assistance or guidance if the decedent had continued to live." He qualified this statement by explaining that the jury should "consider the benefits which Donna bestowed upon the

survivors in the form of service or assistance; and ... the guidance and training afforded by Donna to such survivor infants and the probabilities of whether and how long Donna would continue to have made such contribution to the welfare of other minor children who are now the survivors." As to the parents' losses, the judge stated: "You [the jury] should consider the services that Donna had performed about the household in the past, such as babysitting, cleaning and other types of home chores. In evaluating this claim, you may also consider the likelihood of any additional chores which ... Donna would have undertaken had she grown older about the house." The jury was further instructed to deduct from the value thus determined.the costs of feeding, clothing and educating Donna until her majority. This would have included the $4,000 her father was planning to spend for her college tuition.

After deliberating for approximately an hour and a half, the jury returned a verdict of no damages. Plaintiffs' motion for a new trial on damages was denied. The trial judge concluded that "it would be reasonable for this jury to come to [the] conclusion that the value of her services to babysit or to dry dishes was far exceeded by the cost to the family of feeding, clothing and educating her. The jury in this particular case followed literally the language of the statute and came to the conclusion that they reached." The judge noted that it is unusual for a jury to come in with a verdict of no recovery, and he expressed sympathy with the parents and their shock when they learned of no award for their daughter's death. He concluded, however, that a clear and convincing miscarriage of justice had not occurred. The Appellate Division affirmed this denial in an unreported opinion.

In fairness to the trial court, its instructions to the jury were substantially in accord with present case law. Furthermore, the charge was objected to in only one respect which the court remedied. Under those instructions, the trial judge was clearly correct when, in ruling on the motion for a new trial, he noted that a jury could very well have concluded that the further cost

to the family of maintaining Donna might equal or exceed the pecuniary value of those items of loss which the law, as understood by all concerned, allowed the jury to consider. The charge, as is usual in such cases, focused almost exclusively on the value of household chores that Donna might have performed in the future. While there was some reference to the possibility that she might also have rendered "assistance or guidance," subsequent qualification of this phrase must have led the jury to believe that, at least insofar as the parents were concerned, it referred to the same kind of services Donna had performed in the past, namely, household chores. The entire instruction was practically devoid of any suggestion of a different kind of assistance that a parent or sibling might have received from the decedent in the future. There was no reference, for instance, to the pecuniary value of companionship and advice that Donna might perhaps have given her parents as she and they grew older, the caretaking role that she might have fulfilled towards them over time, whether in the sense of actual physical care and companionship in the event of illness or old age, or services and chores performed simply out of a continuing sense of family obligation. As noted above, such a charge was not compelled by prior holdings, nor was it requested by counsel. The evidence, however, could have supported such a charge, and previous cases did not preclude it.[1]

The development of existing case law elsewhere suggests allowance of such damages as "pecuniary injuries" under wrongful death statutes. This development has probably been influenced by the inconsistent treatment in wrongful death cases between a parent's death and a child's death. In the case of a parent's death, in addition to the usual losses clearly having a monetary value, the law allows damages to be awarded to the surviving children for the loss of guidance and counsel which

---

[1]*But cf. Cooper v. Shore Electric Co.,* 63 *N.J.L.* 558, 567 (E. & A.1899): "[T]he jury cannot take into consideration mental suffering or loss of society . . ." This proposition is discussed *infra.*

they might otherwise have received from the parent. The cases do not suggest that the calculation of such damages must cease after the child reaches majority. They are based on an ongoing relationship which exists in fact, regardless of any lack of legal duty on the part of the parent to render such guidance and despite the difficulty of placing a dollar value on it. Such damages are regularly allowed despite the total lack of proof of such dollar value and of the probability that such guidance and counsel would in fact have been rendered. *See, e. g., Suarez v. Berg*, 117 *N.J.Super.* 456 (1971); *Carter v. West J. & S.R. Co.*, 76 *N.J.L.* 602 (E. & A.1908). *See also, e. g., Solomon v. Warren*, 540 *F.*2d 777 (5th Cir. 1976); *Tolley v. Engert*, 71 *Cal.App.* 442, 235 *P.* 652 (1925); *Tilley v. Hudson R.R. Co.*, 29 *N.Y.* 252 (1864). *See generally* S. Speiser, *Recovery for Wrongful Death* 2d § 3:47 (1975). For instance, the law has allowed damages for the loss of a mother's training and nurture, *see Clark v. Prime*, 18 *N.J.Misc.* 226, 12 *A.*2d 635 (Cir.Ct.1940); *Alfone v. Sarno*, 168 *N.J.Super.* 315 (App.Div.1979), certif. granted, 81 *N.J.* 332 (1979); and a father's guidance and advice, *Frasier v. Public Serv. Interstate Transp. Co.*, 244 *F.*2d 668 (2d Cir. 1957) (N.J. law). It has done the same when the loss was that of a grandparent's solicitous care, *see Carianni v. Schwenker*, 38 *N.J.Super.* 350 (App.Div.1955); and even an adult brother's helpful services to a dependent sister, *see Shutka v. Pennsylvania R. Co.*, 74 *N.J.Super.* 381 (App.Div.1962). In the case of a child's death, however, those services to be given a dollar value are almost invariably limited to household chores–as distinguished from cases where special circumstances suggest the probability of future financial contributions by the child to his parent, *e. g.*, where a child has exhibited extraordinary talents suggesting substantial earning capacity. *See Graf v. Taggert*, 43 *N.J.* 303 (1964); *Wimberly v. City of Paterson*, 75 *N.J.Super.* 584 (App.Div.1962); *Clifford v. McCloskey*, 13 *N.J.Super.* 96 (Law Div.1951); *Sakos v. Byers*, 11 *N.J.Misc.* 527, aff'd, 112 *N.J.L.* 256 (Sup.Ct.1933); *May v. West J. & S.R. Co.*, 62 *N.J.L.* i67 (Sup.Ct.1899); *Consolidated Traction Co. v. Graham*, 62

N.J.L. 90 (Sup.Ct.1898). *Cf. Gluckauf v. Pine Lake Beach Club, Inc.,* 78 *N.J.Super.* 8 (App.Div.1963) (15–year–old decedent had near–genius I.Q. and special aptitude for science); *Kopko v. New York Live Poultry Trucking Co.,* 3 *N.J.Misc.* 498, aff'd, 102 N.J.L. 440 (Sup.Ct.1925) (12–year–old violinist had great talent). Some cases allow the jury to consider the possibility of post–majority direct financial help even from what appears to be an average child, given his earnings during minority and the family's special circumstances. *McStay v. Pryzchocki,* 9 *N.J.Super.* 365 (Cty.Ct.), aff'd, 10 *N.J.Super.* 455 (App.Div.1950), aff'd, 7 N.J. 456 (1951); *Bohrman v. Pennsylvania Railroad Co.,* 23 *N.J.Super.* 399 (App.Div.1952). Our cases, however, have not recognized that parents whose child is killed may lose as well the future pecuniary benefit of that child's guidance and counsel, much as the child would have lost theirs had either of them been killed. Nor have they acknowledged the pecuniary value to the parents of the anticipated companionship of the child when the parents are infirm or aged.

As suggested above, other states, sometimes similarly bound by legislation, sometimes by decisional law, have relaxed the strict pecuniary approach to damages for a child's death where its potential for harsh results is substantial. One of the most noteworthy of these efforts has occurred in Michigan. In *Wycko v. Gnodtke,* 361 *Mich.* 331, 105 *N.W.*2d 118 (1960), the Michigan Supreme Court rejected a strict pecuniary loss rule that its courts had engrafted onto a statute that had allowed recovery for losses of a pecuniary nature. The Michigan court pointed out that the era of child labor, and hence the fixation with earnings and services, was over. Rejecting "the bloodless bookkeeping imposed upon our juries by the savage exploitations of the last century," the court held that the worth of a child's life should henceforth be calculated according to his function as part of an ongoing family unit. When *Wycko* was overruled in *Breckon v. Franklin Fuel Co.,* 383 *Mich.* 251, 174 *N.W.*2d 836 (1970), the Michigan Legislature responded by incorporating into its Wrongful Death Act a provision that damages

may also include recovery for loss of society and companionship, thus affirming the result in *Wycko*. *Mich.Stat.Ann.* § 27A.2922. In Minnesota, which has a strict pecuniary loss statute, the Minnesota Supreme Court reached the same result by interpreting the loss of a child's advice, comfort, assistance and protection as a pecuniary loss. *Fussner v. Andert*, 261 *Minn.* 347, 113 *N.W.*2d 355 (1961). The Nebraska Supreme Court, in *Selders v. Armentrout*, 190 *Neb.* 275, 207 *N.W.*2d 686 (1973), overturned a judicially imposed strict pecuniary loss rule in order to allow recovery for loss of society, comfort and companionship. In *Lockhart v. Besel*, 71 *Wash.*2d 112, 426 *P.*2d 605 (1967), the Washington Supreme Court rejected a judicially imposed strict pecuniary loss rule to allow recovery for loss of companionship. Similar results have occurred in California, Montana, Pennsylvania, South Dakota and the Virgin Islands. *See* S. Speiser, *Recovery for Wrongful Death* 2d § 3:49 at 318 n.3 (1975).

The New York courts, feeling trapped by the strict pecuniary loss limitation set forth in their Wrongful Death Act, have repeatedly criticized the rule and urged the Legislature to change it. *Fornaro v. Jill Bros.*, 42 *N.Y.Misc.*2d 1031, 249 *N.Y.S.*2d 833 (Sup.Ct.1964), rev'd on other grounds, 22 *App.Div.*2d 695, 253 *N.Y.S.*2d 771 (App.Div.1964) (criticizing pecuniary loss limitation as needlessly harsh and unrealistic and pleading for legislative change); *Gary v. Schwartz*, 72 *Misc.*2d 332, 339 *N.Y.S.*2d 39 (Sup.Ct.1972) (same). *See also Bell v. Cox*, 54 *App.Div.*2d 920, 388 *N.Y.S.*2d 118 (App.Div.1976) (change in pecuniary loss test for Legislature or Court of Appeals; nevertheless, $10,000 verdict for death of "loving and considerate" 19–year–old daughter who did not live home with parents held "shockingly inadequate"). *See generally* 2 F. Harper & F. James, *The Law of Torts* 133 (1956); Speiser & Malawer, "An American Tragedy: Damages for Mental Anguish of Bereaved Relatives in Wrongful Death Actions," 51 *Tul.L.Rev.* 1 (1976); Lambert, "Death of a Child," 30 *NAACA L.J.* 188 (1964), *reprinted in* S. Schreiber, *Damages in Personal Injury and Wrongful Death Cases* (1965).

■ The fact that parents are usually legally entitled to the services of their children until majority seems to have led us in New Jersey to the implicit conclusion that that is the limit of the parents' loss (other than prospective financial contributions). But continuing family relationships—uninterrupted by the death of a family member—encompass more than the exchange of physical chores around the house at various times during the family's history, and even more than direct financial contributions. Perhaps as significant is the apparent absence in infant death cases of the kind of expert testimony that might have helped courts to perceive a greater extent of loss than previously recognized. In any event, we see no reason why the same factual approach used in adult death cases should not be taken when it is a child who has been killed. There is nothing in the statute to distinguish one case from the other: "pecuniary injuries" suffered by the surviving next of kin is the standard for *all* wrongful death cases. *N.J.S.A.* 2A:31–5. As this Court has said in an infant death case, "the pecuniary injury designated by the statute is nothing more than a deprivation of a reasonable expectation of a pecuniary advantage which would have resulted by a continuance of the life of the deceased," *Cooper v. Shore Electric Co.*, 63 *N.J.L.* 558, 567 (E. & A.1899). *See also McStay v. Pryzchocki*, 7 *N.J.* 456, 461 (1951).

What services, what activities, could a daughter or son reasonably have been expected to engage in but for their death and to what extent do any of them have monetary value? Just as the law recognizes that a child may continue performing services after age 18, and that monetary contributions may also be received by the parents thereafter when the child becomes productive, it should similarly recognize that the child may, as many do, provide valuable companionship and care as the parents get older. As noted above, our courts have not hesitated to recognize the need of children for physical help and care. Parents facing age or deteriorating health have the same need, and it is usually their children who satisfy that need. Indeed the loss of companionship and advice which a parent suffers when a

child is killed will sometimes be as great as the loss of counsel and guidance which a child suffers when a parent is the victim.

█ Companionship and advice in this context must be limited strictly to their pecuniary element. The command of the statute is too clear to allow compensation, directly or indirectly, for emotional loss. Our cases uniformly so hold. *Graf v. Taggert,* 43 *N.J.* 303, 308–309 (1964); *McStay v. Pryzchocki,* 7 *N.J.* 456, 460 (1951); *Carter v. West J. & S.R. Co.,* 76 *N.J.L.* 602, 604 (E. & A.1908); *Cooper v. Shore Electric Co.,* 63 *N.J.L.* 558, 567 (E. & A.1899); *Alfone v. Sarno,* 168 *N.J.Super.* 315, 321 (App.Div. 1979), certif. granted, 81 *N.J.* 332 (1979).

Companionship, lost by death, to be compensable must be that which would have provided services substantially equivalent to those provided by the "companions" often hired today by the aged or infirm, or substantially equivalent to services provided by nurses or practical nurses.[2] And its value must be confined to what the marketplace would pay a stranger with similar qualifications[3] for performing such services. No pecuniary value may be attributed to the emotional pleasure that a parent gets when it is his or her child doing the caretaking rather than a stranger, although such pleasure will often be the primary

---

[2]Hired companions today perform a variety of services, primarily, however, simply keeping the employer company and administering to basic needs. They may prepare and serve meals, do grocery shopping, perform other errands, keep the home tidy, give medicines, make telephone calls, and generally make themselves useful–including making it possible for the employer to be outdoors. Care given by children to aging or infirm parents is often indistinguishable from those services. Children also often provide many of the services ordinarily rendered by practical nurses, such as bathing the bedridden, changing bandages, moving an immobilized patient, administering medication, spoon–feeding invalids, preparing special meals, keeping a sickroom tidy–even removing visitors if they tire the invalid. Companionship, in this sense, however, will not include true nursing services unless the decedent had or was likely to have special training.

[3]One such obvious qualification–of pecuniary value–of the deceased child is the knowledge of the parent, his or her habits, likes, dislikes, weaknesses and strengths, all amounting to a complex patient history.

value of the child's service, indeed, in reality, its most beneficial aspect. This loss of added emotional satisfaction that would have been derived from the child's companionship is fundamentally similar to the emotional suffering occasioned by the death. Both are emotional rather than "pecuniary injuries," one expressed in terms of actual emotional loss, the other in terms of lost prospective emotional satisfaction. In another sense, the loss of the prospective emotional satisfaction of the companionship of a child when one is older is but one example of the innumerable similar prospective losses occasioned by the child's death—all of which, plus much more, is included in the emotional suffering caused by the death.

Given this jurisdiction's vastly expanded scope both of tort liability and of recoverable damages—including emotional loss, for instance, when a parent actually witnesses a child's death, *Portee v. Jaffee*, 84 *N.J.* 88 (1980)—we know of no public policy which would prohibit awarding damages that fully compensate for the loss of emotional pleasure in this situation, or indeed for the emotional suffering caused by the death. We recognize that our prohibition against such damages deprives the surviving parent of compensation for the real loss. That prohibition is not a matter of our choice, rather it is fundamental to the legislation.[4]

---

[4]As early as 1964, in *Graf v. Taggert*, 43 *N.J.* 303, 308–309 n.1 (1964), this Court pointed to the growing number of jurisdictions which had abandoned the pecuniary loss rule altogether or interpreted pecuniary loss to cover such items as loss of society or companionship. This trend has continued. At present, twelve states have enacted statutes allowing recovery for mental anguish or loss of comfort and companionship: Alaska (comfort and companionship; Arkansas (comfort and companionship, anguish); Florida (comfort and companionship, anguish); Hawaii (comfort and companionship); Kansas (comfort and companionship, anguish); Maryland (comfort and companionship, anguish); Michigan (comfort and companionship); Mississippi (comfort and companionship); Nevada (comfort and companionship); West Virginia (comfort and companionship, interpreted to cover anguish as well); Wisconsin (comfort and companionship); Wyoming (comfort and companionship). *See* S. Speiser, *Recovery for Wrongful Death* 2d § 3:47 n.98 at 317, § 3.53 at 336 (1975).

■ The loss of guidance, advice and counsel is similarly to be confined to its pecuniary element. It is not the loss simply of the exchange of views, no matter how perceptive, when child and parent are together; it is certainly not the loss of the pleasure which accompanies such an exchange. Rather it is the loss of that kind of guidance, advice and counsel which all of us need from time to time in particular situations, for specific purposes, perhaps as an aid in making a business decision, or a decision affecting our lives generally, or even advice and guidance needed to relieve us from unremitting depression.[5] It must be the kind of advice, guidance or counsel that could be purchased from a business adviser, a therapist, or a trained counselor, for instance. That some of us obtain the same benefit without charge from spouses, friends or children does not strip it of pecuniary value.

---

, As noted above, at 11–12, in many other jurisdictions, courts unfettered by legislation have taken the initiative in allowing recovery for traditionally non–pecuniary losses. These jurisdictions include Arizona, Idaho, Louisiana, Puerto Rico, South Carolina, Texas, Utah, Vermont, Virginia and Washington. See S. Speiser, supra, § 3:49 nn.89–95 at 313–16. Even several jurisdictions bound by strict pecuniary loss rules have nevertheless allowed recovery for the "pecuniary value" of such items as comfort and companionship, or advice and counsel. Among these jurisdictions are California, Michigan, Minnesota, Montana, Pennsylvania, South Dakota and the Virgin Islands. See Speiser, supra, § 3:49 at 318–22. Those jurisdictions that have not yet abandoned a strict pecuniary loss rule are being urged by commentators to do so. See, e. g., Belfance, "Inadequacy of Pecuniary Loss as a Measure of Damages in Actions for the Wrongful Death of Children," 6 Ohio Northern U.L.Rev. 543 (1969); Speiser and Malawer, "An American Tradegy: Damages for Mental Anguish for Bereaved Relatives in Wrongful Death Actions," 51 Tul.L.Rev. 1 (1976); Note, "Wrongful Death of Children: the Real Injury," 5 W.St.U.L.Rev. 253 (1978); Note, "Wrongful Death of Minors," 47 U.M.K.C.L.Rev. 121 (1978).

[5]"Clearly, advice and counsel which might have been given appellees by their son in areas of business decisions, family financial decisions, and personal dilemmas which they might encounter, have monetary value." Bridge v. Borack, 524 S.W.2d 773, 776 (Tex.Civ.App.1975) (decedent, a 21–year–old college student, a moral and devoted son); see also Fussner v. Andert, 261 Minn. 347, 113 N.W.2d 355, 359 (1961) (jury must consider value of child's advice, counsel and guidance among other things).

Having defined the companionship and advice, loss of which is compensable in an action for the wrongful death of a child, we next address some of the concerns arising from this expansion of recovery in these cases.

Absent special circumstances, it could be claimed that the mere parent–child relationship does not show that it is more probable than not that such services would have been rendered had the child lived. Who knows what the child's circumstances would be, or whether the parent would indeed become old or infirm and require such companionship, or need such advice at any time? Given the speculative quality of the inferences, it might further be questioned whether one could realistically attach an estimated pecuniary value to such services. Our answer is, even assuming no special circumstances are proven, that the nature of these cases has led our courts to allow damages even though the inferences, and the estimate of damages, are based on uncertainties. *Cooper v. Shore Electric Co.,* *supra,* 63 *N.J.L.* 558, 567; *McStay v. Pryzchocki,* 10 *N.J.Super.* 455, 458 (App.Div.1950); *Paulmier v. Erie R.R. Co.,* 34 *N.J.L.* 151, 158 (Sup.Ct.1870). When a parent dies and loss of advice, guidance and counsel is allowed to the surviving children, and when an infant child dies and loss of prospective services is allowed to the parents, the proof that suffices is the parent–child relationship and what we assume the jury can conclude from that relationship alone. Damages are allowed without any showing that the parent had actually been rendering valuable advice, or was likely to do so, or that the child–even if only five months old, *Greenberg v. Stanley,* 51 *N.J.Super.* 90, 108–109 (App.Div.1958), aff'd in relevant part, 30 *N.J.* 485, 492 (1959)[6] –was likely to render services around the house. Even in this case the charge of the judge would have allowed the jury to find loss of prospective financial contributions, although there was

---

[6] *But cf. Graf v. Taggert,* 43 *N.J.* 303, 311 (App.Div.1964) (no cause of action for wrongful death of unborn child because prospective pecuniary loss resulting from such death too spectulative).

nothing in the record suggesting that Donna would have made such. *Cf. McStay v. Pryzchocki, supra,* 10 *N.J.Super.* at 463–64, involving the special circumstance that, subsequent to the wrongful death of the two infants, the father died, making it more likely that pecuniary contributions to the widow might have been forthcoming. We acknowledge that it is more likely that parents will render advice and counsel to children than the reverse, and that it is more likely that children will render services about the house when they are minors than that they will provide valuable companionship after the parents become aged or infirm.[7] But we are not about to deny this pecuniary element of prospective companionship and advice from a child because it may be somewhat more conjectural. Our tradition in these cases is to the contrary. Given a normal parent–child relationship, a jury could very well find it is sufficiently probable, had the child lived, that at some point he or she would have rendered the kind of companionship services mentioned herein and, although perhaps even somewhat more conjectural, the kind of advice, guidance and counsel we have described.[8] It will be up to the jury to decide what services would have been rendered, and what their value is, subject to no more or no less control, direction, and guidance from the court than occurs in other wrongful death cases. There need be no showing that companionship and advice will probably be purchased by the

---

[7] *But cf.* the probability of prospective contribution of earnings: "[T]his attribution of pecuniary value to actually expected services and companionship seems to offer a more realistic basis for damages than the fictitious contribution of earnings basis." *2 F. Harper & F. James, The Law of Torts* 149 (Supp.1968).

[8] But compare the degree of speculation suggested by the Appellate Division in another context: "When claim is made by a child of tender years for the death of his parent, it is reasonable to assume, even if he is being supported by one who has no obligation to support him, that at some time before maturity he might have to seek the parent's help." *State v. Gosnell,* 106 *N.J.Super.* 279, 284 (App.Div.1969).

parent because of the child's death; it is sufficient that the deceased would have rendered them.

Obviously the use of an expert in these cases could be most helpful, along with such detailed information concerning family circumstances as counsel can provide. The lack of such information was noted by the Appellate Division in *McStay v. Pryzchocki, supra,* 10 *N.J.Super.* at 462:

> No evidence was presented as to the financial circumstances of the McStay family, although such matters bear on the question of damages. Was the family situation such that, had death not intervened, the boys would probably have gone to college, and to professional school, and have received an allowance from their mother as long as she lived? Or would they have been apt to spend their lives as common laborers, earning the lowest wages, and able to help the other members of the family but little? Of course, in our fluid American society, the economic and social position of no child is fixed unalterably by the circumstances of the family into which he is born. But on the other hand, the family situation is influential, especially until the child becomes a man and is able to make a position for himself. See *Annotation,* 149 *A.L.R.* 260. Another subject on which evidence was lacking was what it cost Mrs. McStay to provide food and clothing, etc., for a child.

Despite this lack of information, the damages found by the jury were sustained, but we agree with the court's conclusion that "the jury should not have been left to conjecture on these matters." *Id.* While it may not be legally necessary to have answered all these questions, it is obviously desirable to do so.

■ Ascertaining the present value of the prospective services presents no particular problem simply because they will be rendered in the distant future. The same mathematics which allow discounting the value of prospective services to be rendered in two years can be applied to those which may be rendered in twenty.

We do not regard our holding concerning the compensability of loss of companionship as an expansion of recovery in these cases except in the sense that prior cases have not explicitly recognized this element of damage. The loss is within the statutory limit of "pecuniary injuries" and its allowance does

not overrule prior cases.[9]  Troublesome is the language in *Cooper v. Shore Electric Co., supra,* 63 *N.J.L.* at 567, to the effect that there will be no damages for "loss of society," quoted in *McStay* at 7 *N.J.* 460, and repeated, in a different context, by this Court in *Russell v. Salem Transportation Co., Inc.,* 61 *N.J.* 502, 508 (1972) ("Moreover, the benefit under the death act is solely for pecuniary loss, albeit that may include services or nurture having pecuniary value, but it does not include loss of companionship as such"—referring to a parent's death).  In none of these cases, apparently, did counsel attempt to isolate from the ordinary "loss of society and companionship" those elements having a distinctly pecuniary value.  We know of no case where the issue was joined, and therefore do not regard those cases in any respect as being overruled.  The emotional loss flowing from a loss of companionship and society is still beyond the reach of any recovery in a wrongful death action;  not so the pecuniary element.

Extension of the scope of recovery in cases involving a child's death should reduce the adverse effect the present restrictive rules probably have on juries.  Verdicts in these cases sometimes result from the jury's desire to award the parents something for their emotional suffering (not permitted by law) in view of the severely restricted permissible items of recovery.  A compassionate jury, wanting to give the parents something substantial for their emotional loss but being told, in effect, that the measure of recovery is the value of the household chores that might have been performed less the future cost to the parents of maintain-

---

[9]Prior cases arguably suggest such a result.  In *McStay v. Pryzchocki, supra,* 10 *N.J.Super.* at 461, the Appellate Division, after noting that prospective benefits are not limited to the minority of the decedent nor to what the next of kin would probably have received from decedent "in money," goes on to say that "the damages may include the money value of services and *care* which decedents, had they lived, would probably have given to the next of kin," citing *Carter v. West J. & S.R. Co.,* 76 *N.J.L.* 602 (E. & A.1908) (emphasis added).  That case, however, as well as its affirmance by this Court, focused on loss of prospective pecuniary contributions rather than the kind of companionship mentioned herein.

ing the child, is inclined to set an unrealistically high value on those household chores. A more conscientious jury will add up the numbers and come in with zero. By allowing the jury realistically to measure these additional elements of the losses which may be suffered by parents when a child is killed, we believe that they will be more likely to return verdicts based upon the judge's charge, rather than, as now, to find a way to do some kind of justice despite the judge's charge.[10] Our expectation is that verdicts will more nearly reflect the actual pecuniary losses suffered.

One further consideration suggests that this extension of recovery is warranted. Parents live longer today; the proportion of people age 65 and over in our population continues to grow.[11] And their children retire earlier, become independent sooner, and free of the obligation to support the grandchildren sooner. We suspect that there are many more children aged 45 to 55 who are faced with their parents' need for care and guidance than there were in the past, and who are able to render such care and guidance along with whatever help they

---

[10]According to Prosser:

> As any parent is well aware, any realistic view of the prospects must mean that the cost of rearing the child will far exceed any conceivable benefits that might ever be optimistically expected of him; and damages honestly calculated on this basis could never be anything but a minus quantity. Nevertheless, in such cases substantial verdicts have been sustained, where it is very evident that the jury have taken the bull by the horns, and in reality have compensated for the prohibited sentimental aspects of the family relation, with the court benevolently winking at the flagrant violation of the rule it has laid down. . . . Such decisions do not appear very likely to command respect for the administration of justice; but it seems evident that *it is the theory which is wrong, and not the result.* [W. Prosser, *The Law of Torts*, § 127 at 909 (4th ed. 1971) (emphasis added)].

[11]Life expectancy, total (male and female) 1920, 54.1 years; 1940, 62.9 years; 1960, 69.7 years and 1977, 73.2 years (Table 100: U.S. Dep't of Commerce Bureau of the Census, *Statistical Abstract of the U. S.* 100th Ed. (1979) at 70); percentage of Americans 65–plus years old: 1960, 9.2 percent; 1978, 11.0 percent; 1990 (projection), 12.2 percent (Table 34, *supra*, at 32).

may from time to time give to their emancipated children. Nursing homes are not the only vehicle for this assistance. The parents' need is real, and when a middle–aged son or daughter is not there because of a wrongful death, a prospective pecuniary advantage of the aged or infirm parent has been lost. Another factor is of similar significance: while the death rate of the older part of our population continues to decrease, that of the younger has started to increase.[12]

For the reasons set forth above, the decision of the Appellate Division is reversed and the matter is remanded for a new trial as to damages only.

*For reversal and remandment*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, SCHREIBER, HANDLER and POLLOCK–6.

*For affirmance*–None.

---

[12]*U.S. Dep't of Health and Human Services, Health: United States, 1980* (Public Health Service No. 81–1232) (overall death rate for Americans dropped 20 percent from 1960 to 1978 while the death rate for youths (15–24) rose by 11 percent from 1960 to 1978).