For reasons heretofore stated, this court rules as follows:

Johnson's claim that the filing of a Chapter 13 petition constituted an "objection" under *R.* 4:65–5 to the Sheriff's sale which would justify vacating the subsequent deed is without merit, and is thus denied. Jurisdiction is properly with the Federal court on whether the "stay" and "cure of default" provisions of the bankruptcy code toll or suspend what remains of the right of redemption as determined by state law. The extent to which Johnson's remaining interest in the property, if any, as of the time of filing of the petition became part of the bankruptcy "estate" is exclusively a federal question. The court finds that no adjournment was granted and any claim by Johnson based thereon is rejected. The doctrine of laches as asserted by the Bank and the Buyer against Johnson is inapplicable. Counsel for the Bank shall submit an appropriate order.

IDA CONTENTO, PLAINTIFF, v. CATHERINE CONTENTO AND MARY FESTA, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF ANTHONY CONTENTO.

CATHERINE CONTENTO, PLAINTIFF, v. MARY FESTA, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF ANTHONY CONTENTO, DEFENDANT.

Superior Court of New Jersey
Chancery Division Cumberland County

Decided April 28, 1986.

*Vincent J. Pancari,* for plaintiff (*Pancari, Zerella, Tedesco & Pancari,* attorneys).

*Joseph D. Marchand,* for defendant (*Marchand & Marchand,* attorneys).

KLEINER, J.S.C.

This opinion amplifies with greater specificity a previous letter opinion issued at the conclusion of a nonjury trial.

The novel question presented in this suit for a declaratory judgment arises from a dispute over the distribution of proceeds derived from the settlement of a wrongful death action which involved, in part, claims asserted pursuant to the decision in *Green v. Bittner,* 85 *N.J.* 1 (1980).

Ordinarily the question of the method, manner, and to whom wrongful death action proceeds are to be distributed is governed by *N.J.S.A.* 2A:31–4 and is generally cognizable in the Superior Court, Law Division, before the court to which the wrongful death action was originally assigned.

The unusual factual background of this litigation, however, resulted in the institution of a suit for declaratory judgment as to distribution in the Chancery Division.

Anthony Contento died a resident of Cumberland County on March 19, 1982. On June 23, 1972, he married Catherine Contento and resided with her in a jointly owned marital residence in Cape May County until July 26, 1979, when his wife vacated the marital residence and established a new residence in Lucerne County, Pennsylvania. There were no children born of this marriage.

Prior to leaving Cape May County, Catherine Contento consulted an attorney to discuss the prospective sale of the marital home, a division of marital personal property and her rights and obligations as a woman living separate and apart from her husband.

Ultimately a contract of sale for the conveyance of the marital home was prepared and was executed by Anthony and Catherine Contento. When the marital residence was sold, the parties divided their personal property and equally divided the net proceeds of the sale of the marital residence.

In October, 1979, due to a period of unemployment resulting from ill health Catherine Contento applied for public assistance with the Lucerne County Welfare Board. As part of her application, she signed a complaint for support under the Uniform Reciprocal Support Act, which complaint was forwarded by authorities in Lucerne County, Pennsylvania, to the Probation Department of Cape May County where her husband was still a resident. Although Anthony Contento was served with the complaint for support, prior to the date that he was required to appear, the Cape May County Probation Department was advised by the Lucerne County Probation Department that Catherine Contento's application for support had been withdrawn. Catherine Contento testified in the present trial that her application for support was not pursued as she had returned to gainful employment and was no longer in need of public assistance. The support complaint was administratively dismissed by the Cape May County Juvenile and Domestic Relations Division in February 1980.

Subsequent to the above events, until March 19, 1982, when Anthony Contento died, Catherine Contento made no further application for support and received no voluntary support payments from her husband. Testimony at trial clearly indicated that other than a few periodic telephone conversations and one instance in which Catherine Contento actually saw Anthony, there was no other communication or contact between them prior to his death.

Anthony Contento died as a result of an alleged act of medical malpractice while a patient at Newcomb Hospital, Vineland, New Jersey. On March 24, 1982, Catherine Contento applied for letters of administration pursuant to an affidavit alleging that her deceased husband's estate consisted of assets not exceeding $10,000. Letters of administration were issued by the Surrogate of Cumberland County.

On January 8, 1983, Anthony Contento's two emancipated sisters and his one emancipated brother consulted an attorney in Atlantic City, New Jersey, to discuss a possible claim under our wrongful death statute, *N.J.S.A.* 2A:31–1 *et seq.* Credible testimony at trial reveals that Anthony Contento's siblings believed that Anthony Contento and Catherine may have been divorced and they so advised their attorney. Their attorney undertook an investigation of the wrongful death claim and further attempted to determine the viability of the Contento marriage. Between January 8, 1983, and March 14, 1984, the attorney was unable to contact Catherine Contento but was satisfied from his investigation that Anthony had left surviving a widow. Insofar as the statute of limitations was about to expire, he immediately filed a complaint which was designated a "medical negligence" complaint with the Clerk of the Superior Court. He designated the party plaintiffs as "The Estate of Anthony Contento, Anthony Contento, individually, and Catherine Santee Contento." The complaint was not filed in the name of an administrator *ad prosequendum* as required by *N.J.S.A.* 2A:31–2.

This attorney was called as a witness in this declaratory judgment trial and testified that although he was not retained by Catherine Contento and had never been in contact with her, he included her as a party plaintiff in order to protect her legal interests, if any, due to the impending expiration of the statute of limitations.

Coincidentally, Catherine Contento also conferred with legal counsel and on March 1, 1984, a complaint designated "Com-

plaint in Wrongful Death and Survival" was filed in the United States District Court for the District of New Jersey, in which "Catherine Contento as the Administratrix of the Estate of Anthony Contento" was named as plaintiff and wherein the Newcomb Hospital and several treating physicians were named as defendants.

When defendants in each law suit were properly served with process, it became obvious that two separate law suits had been filed. Both attorneys for plaintiffs were notified.

The Atlantic City attorney testified that after conferring with Catherine Contento's individual counsel, that it was agreed that the law suit filed in Atlantic County would be pursued and the suit pending in the United States District Court would be dismissed.

In September 1984, the wrongful death claim was settled, prior to any trial listing, for $65,000. In order to effectuate the settlement, Mary Festa, an emancipated sister of the decedent, applied for letters of administration *ad prosequendum* with the Surrogate of Cumberland County. Catherine Contento, as widow, executed a renunciation so as to permit Mary Festa to be named as administratrix *ad prosequendum*. Subsequently Catherine Contento also executed a general release as to all defendants in the wrongful death action as she had been named as a party plaintiff. After the deduction of attorney's fees and reimbursable costs of suit, there remained available for distribution $42,409, and that sum has been deposited with the Surrogate of Cumberland County in an interest bearing account, pursuant to a consent order bearing the caption of this litigation.

The genesis of this litigation arises from a complaint filed by Ida Contento, the 84-year-old mother of Anthony, who seeks a declaration from this court that she is solely entitled to the total proceeds of the wrongful death action. Catherine Contento filed an answer and third-party complaint for declaratory judgment.

It is the contention of Ida Contento, as corroborated by the testimony offered by the Atlantic City attorney who handled the wrongful death litigation, that her attorney was successful in negotiating a settlement insofar as the attorney strongly asserted in his negotiations with the medical malpractice insurance carriers, a claim on behalf of Ida Contento respecting her loss of companionship of her emancipated son pursuant to *Green v. Bittner, supra.* Ida Contento thus claims that her *Green v. Bittner* cause of action renders her a dependent of the decedent under *N.J.S.A.* 2A:31-4. She further claims that insofar as Catherine Contento was not economically dependent upon the decedent, that the total funds available for distribution must be distributed to her, to the exclusion of Catherine Contento.

*N.J.S.A.* 2A:31-4 provides as follows:

The amount recovered in proceedings under this chapter shall be for the exclusive benefit of the persons entitled to take any intestate personal property of the decedent, and in the proportions in which they are entitled to take the same. If any of the persons so entitled were dependent on the decedent at his death, they shall take the same as though they were sole persons so entitled, in such proportions, as shall be determined by the court without a jury, and as will result in a fair and equitable apportionment of the amount recovered, among them, taking into account in such determination, but not limited necessarily thereby, the age of the dependents, their physical and mental condition, the necessity or desirability of providing them with educational facilities, their financial condition and the availability to them of other means of support, present and future, and any other relevant factors which will contribute to a fair and equitable apportionment of the amount recovered.

In order to determine the persons entitled to take intestate personal property, the court must consider *N.J.S.A.* 3B:5-3. A surviving spouse is entitled to the entire estate of a decedent dying intestate unless the decedent is also survived by a parent. In the latter situation the surviving spouse is entitled to the first $50,000 of intestate property plus one-half of the balance of the intestate estate and the surviving parent is entitled to one-half of the balance of the estate after the deduction of the first $50,000 payable to the surviving spouse.

*N.J.S.A.* 3B:5-3 must be read, however, *in pari materia* with *N.J.S.A.* 2A:31-4 which establishes a different scheme of

distribution of wrongful death proceeds to the heirs of an intestate decedent where there are heirs surviving who were dependent upon the decedent.

Ida Contento thus contends that as the only heir at law dependent upon the decedent, she is entitled to the total proceeds derived from the wrongful death settlement.

The wrongful death statute was enacted by our Legislature effective February 15, 1961. *Green v. Bittner, supra,* was decided by our Supreme Court in 1980, without reference to the wrongful death statute. This court is therefore required to construe Ida Contento's claim of dependency to determine if, in fact, she is a surviving heir who was dependent upon the decedent as required by *N.J.S.A.* 2A:31-4.

Ida Contento was called as a witness to testify as to her dependency. The totality of her testimony can be summarized as follows: she resides with her emancipated daughter, Mary Festa, and relies for support and companionship upon Mary Festa, as well as income derived from some minimal investments and social security benefits. In maintaining their household, she and her emancipated daughter "pool" their financial resources.

She derived no financial contribution from her decedent son and her son performed no services for her. She testified that her son telephoned her approximately once each week and visited her approximately two times each month. These telephone calls and visits provided her with "comfort and made her feel good."

Our Supreme Court in *Green v. Bittner, supra,* in discussing the loss of companionship of a child and the method and manner of ascribing a pecuniary value to the same, stated:

> Companionship, lost by death, to be compensable must be that which would have provided services substantially equivalent to those provided by the "companions" often hired today by the aged or infirm, or substantially equivalent to services provided by nurses or practical nurses. And its value must be confined to what the marketplace would pay a stranger with similar qualifications for performing such services. No pecuniary value may be attributed to the

emotional pleasure that a parent gets when it is his or her child doing the caretaking rather than a stranger, although such pleasure will often be the primary value of the child's service, indeed, in reality, its most beneficial aspect. This loss of added emotional satisfaction that would have been derived from the child's companionship is fundamentally similar to the emotional suffering occasioned by the death. Both are emotional rather than "pecuniary injuries," one expressed in terms of actual emotional loss, the other in terms of lost prospective emotional satisfaction. In another sense, the loss of the prospective emotional satisfaction of the companionship of a child when one is older is but one example of the innumerable similar prospective losses occasioned by the child's death—all of which, plus much more, is included in the emotional suffering caused by the death. [85 *N.J.* at 12]

■ It is clear to this court that had the wrongful death action proceeded to trial, that any claim of Ida Contento would have been dismissed at the close of the plaintiff's case insofar as the "companionship" described by her is not the type of companionship which has a pecuniary value. If this, in fact, occurred, there would have been no proceeds derived from the wrongful death action particularly as Catherine Contento clearly was not financially dependent upon her husband as required by *N.J.S.A.* 2A:31–4.

■ Although Ida Contento's cause of action, pursuant to *Green v. Bittner, supra,* would not have been successful had the litigation been pursued, the attorney handling that litigation nonetheless was capable of utilizing the theory of *Green v. Bittner, supra,* to induce a settlement.

From the above facts, the dilemma of this court is easily seen. If Ida Contento is deemed not to have been pecunarily dependent upon her deceased son, then her son left surviving two heirs at law entitled to intestate property, *N.J.S.A.* 3B:5–3, and the total net proceeds of the wrongful death settlement would be payable to Catherine Contento to the exclusion of Ida Contento. *Contra,* if this court overlooks the legitimacy of Ida Contento's *Green v. Bittner, supra,* claim, and determines that the successful settlement of the litigation, despite the legitimacy of the claim renders Ida Contento dependent upon her deceased son, then as a sole dependent heir, she is entitled to the total funds available for distribution to the exclusion of the decedent's widow.

Insofar as this is a court which must apply equitable principles, under the unusual circumstances of this case it is the opinion of this court that neither result set forth above is fair nor equitable.

This court has reached a conclusion giving great weight to the following facts:

(1) Catherine Contento instituted her own suit for wrongful death before the Atlantic County law suit was filed. Although in all probability she would not have been successful in that litigation if the case were tried to completion, she gave up the right to negotiate a settlement when she permitted her attorneys to discontinue the litigation in the United States District Court; (2) she renounced her right to serve as administratrix *ad prosequendum* thus enabling Mary Festa to be appointed with the authority to execute releases resulting in the wrongful death settlement; (3) she permitted herself to remain as a party plaintiff in the pending Atlantic County action and executed releases which were necessary to bring that litigation to a conclusion. Additionally, it must be recognized that had Anthony Contento not died and had Catherine Contento again required support and/or public assistance, that as long as she was the legal wife of Anthony Contento, she would have had the right to restore herself as a pecuniary dependent within the meaning of *N.J.S.A.* 2A:31–4.

It is the opinion of this court that the most equitable result would be to ascribe a value to the emotional loss normally not compensable suffered by Ida Contento and to distribute the balance of the wrongful death settlement in a manner so as to give recognition to the fact that Catherine Contento had been married to the decedent for almost ten years, is 45-years of age, was his lawful widow, although his estranged wife, and is in ill health.

In essence, this is equitably dividing the proceeds of this settlement and is utilizing the standards set forth in *N.J.S.A.* 2A:31–4 which would control were both heirs at law truly dependent.

Based upon this interpretation, the court recognizes that Ida Contento has a present life expectancy of 7.22 years and has lost the emotional companionship of her son's visits and telephone calls since the date of his death on March 19, 1982, for a total period of ten years. The court, in exercising its discretion, has determined that a fair value per year for 52 telephone calls and 104 visits is $1,800 and therefore a fair apportionment of the proceeds available for distribution should be $18,000 plus interest which has accrued in the account of the office of the Surrogate. The balance of the net proceeds of $24,409, plus interest, shall be awarded to Catherine Contento. Both awards shall be entered without costs of suit.